IN THE DISTRICT COURT FOR THE UNITED STATES

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-102ML |
| | ) | |
| JOHN CURRAN | ) | |

**UNITED STATES OPPOSITION**
**TO MOTION OF THIRD-PARTY WITNESS,**
**JENNIFER JUDKINS, M.D., TO QUASH TRIAL SUBPOENA**

Now comes the United States and hereby responds to the motion of a third-party witness to quash a trial subpoena. On March 16, 2006, the Unites States served a trial subpoena on Dr. Jennifer Judkins for testimony and records regarding her treatment of one of defendant, John E. Curran's clients, Mr. Steve Gillikin. Dr. Judkins has moved to quash because she claims that disclosure of the records and treatment would violate the Health Insurance Portability and Accountability Act ("HIPPA"). Because this case implicates the United States health oversight role and because disclosure is proper under the law enforcement exception to HIPPA, the United States opposes the motion to quash and requests that the Court order Dr. Judkins to comply with the subpoena. Alternatively, the Court requests that the Court issue an Order requiring Dr. Judkins to comply with the subpoena because the information sought is relevant to this criminal judicial proceeding. In support of its motion, the United States relies on the accompanying memorandum of law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,
ROBERT CLARK CORRENTE
United States Attorney

LUIS M. MATOS
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April, 2006, I caused to be sent via first class regular mail, a true copy of the within Government's Opposition to Motion of Third-Party Witness, Jennifer Judkins, M.D., to Quash Trial Subpoena to:

Douglas J. Emanuel, Esq.
Chace, Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903

Scott A. Lutes, Esq.
127 Dorrance Street
2nd Floor
Providence, R.I. 02903

Steven Gillikin
233 Pavillion Avenue
Providence, RI 02905

**IN THE DISTRICT COURT FOR THE UNITED STATES**

**FOR THE DISTRICT OF RHODE ISLAND**

UNITED STATES OF AMERICA )
)
v. ) CR. NO. 05-102ML
)
JOHN CURRAN )

**UNITED STATES MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO MOTION OF THIRD-PARTY WITNESS, JENNIFER JUDKINS, M.D., TO QUASH TRIAL SUBPOENA**

Now comes the United States and hereby responds to the motion of a third-party witness, Dr. Jennifer Judkins, to quash a trial subpoena. On March 16, 2006, the Unites States served a trial subpoena on Dr. Judkins for testimony and records regarding her treatment of Mr. Steve Gillikin. Attachment 1. Mr. Gillikin is a former client of the defendant, John E. Curran, whom the United States has reason to believe may be called as a witness by the defendant.[1] Dr. Judkins has moved to quash because she claims that disclosure of the records and treatment would violate the Health Insurance Portability and Accountability Act ("HIPPA"). Disclosure is proper in this case because this case implicates the United States health oversight role and because the United States is exercising its law enforcement function. Accordingly, the United Stats requests that the Court deny the motion to quash and order Dr. Judkins to comply with the subpoena.

[1] In addition, there is the possibility that the United States will call him. At minimum, he will be on the United States witness list.

# I. INTRODUCTION

John Curran is charged with 19 counts of wire fraud and 4 counts of money laundering. The charges, as alleged and outlined in the Indictment, arise from Curran's scheme to defraud his clients by ignoring applicable State and Federal health regulations and by falsely representing the nature of his practice, his educational background and his experience in order to deceive them into buying supplements and other items from his "pharmacy." Steve Gillikin is a former client of John Curran and it is the Government's understanding that he may testify for the defendant. Indeed, on May 31, 2006, the defendant provided the United States with discovery which, among other items, included a witness statement of Mr. Gillikin. The statement outlines the medical reasons for Mr. Gillikin's visits with Mr. Curran. For instance, Mr. Gillikin states that he went to see Mr. Curran after being diagnosed with cancer. Nonetheless, while providing the defendant with a statement that outlines his medical condition, Mr. Gillikin is not inclined to share his medical records with the United States.[2]

The United States does have access to John Curran's file on Mr. Gillikin because it was seized, along with hundreds of other client files, when Federal agents executed a search of the defendant's offices. It was from the file maintained by Curran that the United Sates obtained Dr. Judkins's name because the file indicates that Dr. Judkins was Mr. Gillikin's treating physician at the time that he was also seeing Mr. Curran. The records maintained by Dr. Judkins as well as her testimony, therefore, has been appropriately subpoenaed because Mr. Gillikin's medical condition and treatment has been put in issue as a result of this case

---

[2] Mr. Gillikin has been visited by Federal agents and has answered their questions but has not agreed to release his medical records.

## II. STATUTORY BACKGROUND

### A. Overview

Dr. Judkins seeks to quash the subpoena because she claims that a Court order is required pursuant to the medical records privacy regulations established pursuant to HIPPA. 45 C.F.R. § 160.101 et. seq.[3]

Among other things, HIPPA authorized the Secretary of the Department of Health and Human Services (HHS) to develop and submit to Congress privacy standards for medical information, including the uses and disclosures of such information that should be authorized or required. See 42 U.S.C. 1320d-8; 42 U.S.C. 1320a-7c. A key distinction to be made is that HIPPA regulates the conditions under which "covered entities" may disclose identifiable health information. The term "covered entities" is defined to include all entities from whom we typically obtain health care records: government healthcare programs, insurance plans, and healthcare providers and suppliers. *See* 45 C.F.R. § 160.103. It does not regulate the activities of the United States, or other private parties, that may request health information in the course of litigation.

As stated at 45 C.F.R. § 160.102:

> (a) Except as otherwise provided, the standards, requirements, and implementation specifications adopted under this subchapter apply to the following entities:
>
> (1) A health plan.

---

[3] The text of the applicable portions of the regulation is attached to this motion. 45 C.F.R. Parts 160 and 164. Attachment 4-41. In addition, the preamble to the regulation contains extensive discussion. 65 Federal Register 82462-01, 2000 WL 1875566 (F.R.) It is not attached, except for certain excerpts. Attachment 2-3.

> (2) A health care clearinghouse.
>
> (3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter.

Id.; See 45 C.F.R. § 160.103 (for the definition of a covered entity).[4]

The privacy rule requires that the consent of the patient be obtained before a disclosure can be made, unless that disclosure is expressly permitted under the privacy rule. The privacy rule provides only a limited number of circumstances under which protected health information may be disclosed by a health care provider without the patient's consent. These permissive disclosures are contained in 45 C.F.R. § 164.512 and include disclosures for law enforcement and health oversight purposes. See 45 C.F.R. § 164.512. For example, if the disclosure is "required by law", the covered entity is permitted to make the disclosure regardless of a lack of patient's consent. Any "mandate contained in law that compels a covered entity to make a disclosure of protected health information and that is enforceable in a court of law" is considered

> Required by law includes, but is not limited to, court orders and court-ordered warrants; subpoenas or summons issued by a court, grand jury, a governmental or tribal inspector general, or an administrative body authorized to require the production of information; a civil or an authorized investigative demand; Medicare conditions of participation with respect to health care providers participating in the program; and statutes or regulations that require the production of information, including statutes or regulations that require such information if payment is sought under a government program providing public benefits.
>
> * * *
>
> A covered entity may use or disclose protected health information without the written consent or authorization of the individual as

---

[4] The definition section fo the regulation outlines the definitions somewhat in narrative form and does not identify each definition by a subsection identifier.

> described in §§ 164.506 and 164.508, respectively, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity's information and the individual's agreement may be given orally.

45 C.F.R. § 164.512

The only restriction placed on this required by law disclosure is that the disclosure "complies with and is limited to the relevant requirements of such law." 45 C.F.R. § 164.512(a)(1).

**B. Health oversight**

Covered entities generally, are permitted to disclose health information to a health oversight agency.

> A covered entity may disclose protected health information to a health oversight agency for oversight activities authorized by law, **including** audits; civil, administrative, or **criminal investigations**; inspections; licensure or disciplinary actions; civil, administrative, or **criminal proceedings or actions**; or other activities **necessary for appropriate oversight of**:
>
> > (i) **The health care system**;
> >
> > (ii) Government benefit programs for which health information is relevant to beneficiary eligibility;
> >
> > (iii) Entities subject to government regulatory programs for which health information is necessary for determining compliance with program standards; or
> >
> > (iv) Entities subject to civil rights laws for which health information is necessary for determining compliance.

45 C.F.R. § 164.512(d)(1); Attachment at 32-33 (emphasis added).

However, a health oversight function does not include instances where "the individual is the subject of the investigation ... and such investigation ... does not arise out of and is not directly related to: (I) The receipt of health care; (ii) A claim for public benefits related to health; or (iii) Qualification for, or receipt of, public benefits or services when a patient's health is integral to the claim for public benefits or services." 45 C.F.R. § 164.512(d)(2).[5]

As health oversight activity is defined in 45 C.F.R. § 164.501:

> oversight activities authorized by law, including audits; civil, administrative, or **criminal investigations**; inspections; licensure or disciplinary actions; civil, administrative, or **criminal proceedings or actions**; or other activities **necessary for appropriate oversight of**: (I) **The health care system**; (ii) Government benefit programs for which health information is relevant to beneficiary eligibility; (iii) Entities subject to government regulatory programs for which health information is necessary for determining compliance with program standards; or (iv) Entities subject to civil rights laws for which health information is necessary for determining compliance.

See id (emphasis added).

A health oversight agency is defined as an agency or authority of the United States, a State, a territory, a political subdivision of a State or territory, or an Indian tribe, or a person or entity acting under a grant of authority from or contract with such public agency, including the employees or agents of such public agency or its contractors or persons or entities to whom it has granted authority, **that is authorized by law to oversee the health care system (whether public or private)** or government programs in which health information is necessary to determine eligibility or compliance, or to enforce civil rights laws for which health information is

---

[5] Steve Gillikin is not the subject of this case.

relevant. 45 C.F.R. § 164.501(6)(v) (emphasis added).

In this case, the subpoena was served by agents of the United States Food and Drug Administration (FDA) Task Force. FDA's Office of Criminal Investigations investigates criminal violations of, among other statutes, the Federal Food, Drug, and Cosmetic Act (the "FFDCA"), 21 U.S.C. §§ 301 et. seq. A violation of the statutes enforced by FDA has the capacity to affect thousands and, not infrequently, hundreds of thousands of consumers. The Supreme Court has repeatedly confirmed that the Federal Food, Drug, and Cosmetic Act is a public welfare statute that imposes criminal penalties even in the absence of criminal intent, knowledge, or awareness of wrongdoing. United States v. Park, 421 U.S. 658, 672 (1975); United States v. Wiesenfeld Warehouse Co., 376 U.S. 86, 91 (1964); United States v. Dotterweich, 320 U.S. 277, 280-81 (1943). See also, Smith v. California,

The preamble of the privacy rule specifically identifies the Department of Justice and the FDA as health oversight agencies when overseeing activities such health care and health care delivery, medical products and devices, and dietary supplements. See Standards for Privacy of Individually Identifiable Health Information: Final Rule, 65 Fed. Reg. 82492 (Dec. 28, 2000). Attchment at 2-3.[6]

---

[6] Health Oversight Agency

> The preamble to the proposed rule listed the following as examples of health oversight agencies that conduct oversight activities relating to the health care system: state insurance commissions, state health professional licensure agencies, Offices of Inspectors General of federal agencies, the Department of Justice, state Medicaid fraud control units, Defense Criminal Investigative Services, the Pension and Welfare Benefit Administration, the HHS Office for Civil Rights, and the FDA . . . .

(to be codified at 45 C.F.R. pt. 160, 164).

**C. Law enforcement**

HIPPA also allows disclosures for law enforcement pusposes. See 45 C.F.R. § 164.512(f).

> A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if the conditions in paragraphs (f)(1) through (f)(6) of this section are met, as applicable.
>
> (1) Permitted disclosures: Pursuant to process and as otherwise required by law. A covered entity may disclose protected health information:

---

> In the final rule, we include the following as additional examples of health oversight activities: (1) The U.S. Department of Justice's civil rights enforcement activities, and in particular, enforcement of the Civil Rights of Institutionalized Persons Act (42 U.S.C. 1997-1997j) and the Americans with Disabilities Act (42 U.S.C. 12101 et seq.), as well as the EEOC's civil rights enforcement activities under titles I and V of the ADA; (2) the FDA's oversight of food, drugs, biologics, devices, and other products pursuant to the Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.) and the Public Health Service Act (42 U.S.C. 201 et seq.) . .
>
> **"Overseeing the health care system," which is included in the definition of health oversight, encompasses activities such as**: oversight of health care plans; oversight of health benefit plans; oversight of health care providers; **oversight of health care and health care delivery**; oversight activities that involve resolution of consumer complaints; oversight of pharmaceuticals, medical products and devices, and dietary supplements; and a health oversight agency's analysis of trends in health care costs, quality, health care delivery, access to care, and health insurance coverage for health oversight purposes.

65 Fed. Reg. 82492 (Dec. 28, 2000). Attchment at 2-3.

> (i) As required by law including laws that require the reporting of certain types of wounds or other physical injuries, except for laws subject to paragraph (b)(1)(ii) or (c)(1)(I) of this section; or
>
> (ii) In compliance with and as limited by the relevant requirements of:
>
>> (A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;
>>
>> (B) A grand jury subpoena; or
>>
>> (C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that . . .:

Id.; Attachment at 34.[7] Accordingly, law enforcement disclosures include those that are required by law (Section 164.512(f)(1)(I)), those required under a court order, court-ordered warrant, or subpoena or summons issued by a judicial offer (Section 164.512(f)(1)(ii)(A)), a grand jury subpoena (Section 164.512(f)(1)(ii)(B)), or an administrative subpoena or civil investigative demand.[8]

---

[7] **Law enforcement official means** an officer or employee of any agency or authority of the United States, a State, a territory, a political subdivision of a State or territory, or an Indian tribe, who is empowered by law to:

> (1) Investigate or conduct an official inquiry into a potential violation of law; or
>
> (2) Prosecute or otherwise conduct a criminal, civil, or administrative proceeding arising from an alleged violation of law.

45 C.F.R. 160.103.

[8] Subsection (f) also provides for additional disclosures, such as disclosures for the purpose of locating fugitives, which are not applicable here.

**D. Court Orders**

Finally, as cited by Dr. Judkins, the regulation also provides for disclosures pursuant to Court orders.

> A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (1) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (i) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if [certain conditions are satisfied]

45 C.F.R. § 164.512(e); Attachment at 33.

## III. <u>DISCUSSION</u>

This case combines an analysis of both the oversight and law enforcement roles of the Untied States and its investigatory agencies. While this case has been charged as a wire fraud case, the underlying allegations concern, in part, John Curran's manipulation of applicable State and Federal regulations as they applied to his practice. <u>See</u> Indictment ¶¶ 4-22. By so manipulating the regulations as well as making fraudulent and false statements to his clients, Curran preyed on his client's real or apparent health issues for his personal gain.

It was because of its health oversight role that the FDA commenced investigating the matter and it has been in that capacity that this case has been pursued. Accordingly, the request of Dr. Judkins fits within the health oversight exception to the HIPPA regulations. A covered entity may disclose protected health information to a "health oversight agency for oversight activities authorized by law, including . . . .audits; civil, administrative, or **criminal**

**investigations**; inspections; licensure or disciplinary actions; civil, administrative, or **criminal proceedings or actions**; or other activities necessary for appropriate oversight of . . . the health care system." 45 C.F.R. § 164.512(d)(1).

Alternatively, the records should be produced because this is clearly an law enforcement action. Law enforcement disclosures include those that are required by law (Section 164.512(f)(1)(I)), those required under a court order, court-ordered warrant, or subpoena or summons issued by a judicial offer (Section 164.512(f)(1)(ii)(A)). In this case, a subpoena has been lawfully served upon Dr. Judkins.

The effect of HIPPA has not, to date, been extensively analyzed. In United States v. Sutherland, 143 F.Supp. 2nd 609 (W.D. Va. 2001), the district court noted that patients have no expectation of privacy in medical records in federal criminal cases because there is no federal physician-patient privilege. Id., at 610. However, the court also noted that, although not in effect in 2001, the HIPPA privacy regulations signaled a federal interest in protecting the privacy of medical records. The court, relying on 45 C.F.R. § 164.512(e) although the regulation was not yet in effect, ordered that a hospital produce records of a patient of a doctor under indictment for unlawfully dispensing controlled substances, provided that the patient was given notice and an opportunity to object, because the government had a compelling interest in obtaining the records. Id., at 612.

In United States v. Zamora, 408 F. Supp. 2nd 295 (S.D. Texas, 2006), the district court held that, under the law enforcement exception to HIPPA, a clerk of the court was not a "judicial officer" for purposes of issuing a subpoena. Id., at 297. The Court, nonetheless ordered a hospital to turn over records of a defendant indicted for driving while intoxicated. The court

stated that "HIPPA was passed to ensure an individual's right to privacy over medical records, it was not intended to be a means for evading prosecution in criminal proceedings. Id., at 298.

Notwithstanding Zamora, it is unclear from the language of the regulation, whether 45 C.F.R. § 164.512(f) requires that a subpoena be issued by the Court in order for it to be effective. Since Section 512(d) provides for circumstances under which Court orders are obtained, also requiring a court order for the issuance of a subpoena, under Section 512(f), could be viewed as surplusage.

Dr. Judkins complains that disclosure is only warranted if a Court order is obtained and if certain assurances are granted. While it is unclear whether a Court order is necessary, the United States provides the following justification for the Order pursuant to 45 C.F.R. § 164.512(e), if the Court should seek to follow that provision. Mr. Gillikin is not the subject of this matter. The information is not being sought to bring an action against Mr. Gillikin, but rather to compare his records from John Curran's "treatment" of him, to those of an true treating physician. Such a review his wholly appropriate and necessary given the nature of this matter. See United States v. Mazzola 217 F.R.D. 84 (disclosure of medical, psychotherapy, records, of government witness to the defendant was warranted for impeachment purposes.).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Dr. Judkins motion to quash be denied and that the Court Order that she comply with the subpoena that has been lawfully served upon her.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,
ROBERT CLARK CORRENTE
United States Attorney

LUIS M. MATOS
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April, 2006, I caused to be sent via first class regular mail, a true copy of the within Government's Memorandum in Support of It's Opposition to Motion of Third-Party Witness, Jennifer Judkins, M.D., to Quash Trial Subpoena to:

Douglas J. Emanuel, Esq.
Chace, Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903

Scott A. Lutes, Esq.
127 Dorrance Street
2nd Floor
Providence, R.I. 02903

Steven Gillikin
233 Pavillion Avenue
Providence, RI 02905

[signature]