AO 89 (Rev. 5/85) Subpoena

# United States District Court

DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V.

JOHN E. CURRAN

## SUBPOENA

CASE NUMBER: CR. NO: 05-102ML

| TYPE OF CASE | SUBPOENA FOR |
|---|---|
| ☐ CIVIL ☒ CRIMINAL | ☒ PERSON ☐ DOCUMENT(S) or OBJECT(S) |

TO: DR. JENNIFER JUDKINS
845 NORTH MAIN STREET
PROVIDENCE, RI 02903

YOU ARE HEREBY COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
| United States District Court<br>Federal Building - United States Courthouse<br>One Exchange Terrace<br>Providence, Rhode Island | Courtroom 1, Judge Lisi<br>DATE AND TIME<br>5/15/06, 9:30am |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

*ANY AND ALL RECORDS RELATED TO STEVE GILLIKIN FOR THE PERIOD OF JANUARY 1, 2003, THROUGH THE PRESENT**

☐ *See additional information on reverse*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| U.S. MAGISTRATE OR CLERK OF COURT | DATE |
|---|---|
| (BY) DEPUTY CLERK<br>Paulette J Duke<br>Chief Deputy Clerk | 3/10/06 |

| This subpoena is issued upon application of the: | QUESTIONS MAY BE ADDRESSED TO: |
|---|---|
| ☐ Plaintiff ☐ Defendant ☒ U.S. Attorney<br>ROBERT CLARK CORRENTE | LUIS M. MATOS, ASSSISTANT U.S. ATTORNEY<br>United States Attorney's Office<br>50 Kennedy Plaza, 8th Fl. Fleet Cente:<br>Providence, RI 02903 (401) 709-5000<br>ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER |

*If not applicable, enter "none".

Citation | Found Document | Rank 1 of 1 | Database
65 FR 82462-01 | | | FR
65 FR 82462-01, 2000 WL 1875566 (F.R.)

Page 1

**(Cite as: 65 FR 82462)**

RULES and REGULATIONS
DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary
45 CFR Parts 160 and 164
RIN 0991-AB08
Standards for Privacy of Individually Identiifiable Health Information
Thursday, December 28, 2000

***82462** AGENCY: Office of the Assistant Secretary for Planning and Evaluation, DHHS.
ACTION: Final rule.

Page 2

**(Cite as: 65 FR 82462, *82462)**

SUMMARY: This rule includes standards to protect the privacy of individually identifiable health information. The rules below, which apply to health plans, health care clearinghouses, and certain health care providers, present standards with respect to the rights of individuals who are the subjects of this information, procedures for the exercise of those rights, and the authorized and required uses and disclosures of this information.

The use of these standards will improve the efficiency and effectiveness of public and private health programs and health care services by providing enhanced protections for individually identifiable health information. These protections will begin to address growing public concerns that advances in electronic technology and evolution in the health care industry are resulting, or may result, in a substantial erosion of the privacy surrounding individually identifiable health information maintained by health care providers, health plans and their administrative contractors. This rule implements the privacy requirements of the Administrative Simplification subtitle of the Health Insurance Portability and Accountability Act of 1996.

DATES: The final rule is effective on February 26, 2001.

Page 3

**(Cite as: 65 FR 82462, *82462)**

FOR FURTHER INFORMATION CONTACT: Kimberly Coleman, 1-866-OCR-PRIV (1-866-627-7748) or TTY 1-866-788-4989.

SUPPLEMENTARY INFORMATION: Availability of copies, and electronic access.

Copies: To order copies of the Federal Register containing this document, send your request to: New Orders, Superintendent of Documents, P.O. Box 371954, Pittsburgh, PA 15250-7954. Specify the date of the issue requested and enclose a check or money order payable to the Superintendent of Documents, or enclose your Visa or Master Card number and expiration date. Credit card orders can also be placed by calling the order desk at (202) 512-1800 or by fax to (202) 512-2250. The cost for each copy is $8.00. As an alternative, you can view and photocopy the Federal Register document at most libraries designated as Federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

entity or a business associate.

Health Oversight Agency

The proposed rule would have defined "health oversight agency" as "an agency, person, or entity, including the employees or agents thereof, (1) That is: (i) A public agency; or (ii) A person or entity acting under grant of authority from or contract with a public agency; and (2) Which performs or oversees the performance of any audit; investigation; inspection; licensure or discipline; civil, criminal, or administrative proceeding or action; or other activity necessary for appropriate oversight of the health care system, of government benefit programs for which health information is relevant to beneficiary eligibility, or of government regulatory programs for which health information is necessary for determining compliance with program standards." The proposed rule also described the functions of health oversight agencies in the proposed health oversight section (§ 164.510(c)) by repeating much of this definition.

In the final rule, we modify the definition of health oversight agency by eliminating from the definition the language in proposed § 164.510(c) (now § 164.512(d)). In addition, the final rule clarifies this definition by specifying that a "health oversight agency" is an agency or authority of the United States, ***82492** a state, a territory, a political subdivision of a state or territory, or an Indian tribe, or a person or entity acting under a grant of authority from or contract with such public agency, including the employees or agents of such public agency or its contractors or grantees, that is authorized by law to oversee the health care system or government programs in which health information is necessary to determine eligibility or compliance, or to enforce civil rights laws for which health information is relevant.

The preamble to the proposed rule listed the following as examples of health oversight agencies that conduct oversight activities relating to the health care system: state insurance commissions, state health professional licensure agencies, Offices of Inspectors General of federal agencies, the Department of Justice, state Medicaid fraud control units, Defense Criminal Investigative Services, the Pension and Welfare Benefit Administration, the HHS Office for Civil Rights, and the FDA. The proposed rule listed the Social Security Administration and the Department of Education as examples of health oversight agencies that conduct oversight of government benefit programs for which health information is relevant to beneficiary eligibility. The proposed rule listed the Occupational Health and Safety Administration and the Environmental Protection Agency as examples of oversight agencies that conduct oversight of government regulatory programs for which health information is necessary for determining compliance with program standards.

In the final rule, we include the following as additional examples of health oversight activities: (1) The U.S. Department of Justice's civil rights enforcement activities, and in particular, enforcement of the Civil Rights of Institutionalized Persons Act (42 U.S.C. 1997-1997j) and the Americans with Disabilities Act (42 U.S.C. 12101 et seq.), as well as the EEOC's civil rights enforcement activities under titles I and V of the ADA; (2) the FDA's oversight of food, drugs, biologics, devices, and other products pursuant to the Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.) and the Public Health Service Act (42 U.S.C. 201 et seq.); and (3) data analysis -- performed by a public agency

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 160.101
45 C.F.R. § 160.101

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 160--GENERAL ADMINISTRATIVE REQUIREMENTS**
**SUBPART A--GENERAL PROVISIONS**
Current through January 22, 2003; 68 FR 3154

**§ 160.101 Statutory basis and purpose.**

The requirements of this subchapter implement sections 1171 through 1179 of the Social Security Act (the Act), as added by section 262 of Public Law 104-191, and section 264 of Public Law 104-191.

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 160.101

45 CFR § 160.101

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 160.102
45 C.F.R. § 160.102

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 160--GENERAL ADMINISTRATIVE REQUIREMENTS**
**SUBPART A--GENERAL PROVISIONS**
Current through January 22, 2003; 68 FR 3154

**§ 160.102 Applicability.**

(a) Except as otherwise provided, the standards, requirements, and implementation specifications adopted under this subchapter apply to the following entities:

(1) A health plan.

(2) A health care clearinghouse.

(3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter.

(b) To the extent required under the Social Security Act, 42 U.S.C. 1320a- 7c(a)(5), nothing in this subchapter shall be construed to diminish the authority of any Inspector General, including such authority as provided in the Inspector General Act of 1978, as amended (5 U.S.C. App.).

[67 FR 53266, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 160.102

45 CFR § 160.102

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 160.103
45 C.F.R. § 160.103

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 160--GENERAL ADMINISTRATIVE REQUIREMENTS**
**SUBPART A--GENERAL PROVISIONS**
Current through January 22, 2003; 68 FR 3154

**§ 160.103 Definitions.**

Except as otherwise provided, the following definitions apply to this subchapter:

Act means the Social Security Act.

ANSI stands for the American National Standards Institute.

Business associate: (1) Except as provided in paragraph (2) of this definition, business associate means, with respect to a covered entity, a person who:

(i) On behalf of such covered entity or of an organized health care arrangement (as defined in § 164.501 of this subchapter) in which the covered entity participates, but other than in the capacity of a member of the workforce of such covered entity or arrangement, performs, or assists in the performance of:

(A) A function or activity involving the use or disclosure of individually identifiable health information, including claims processing or administration, data analysis, processing or administration, utilization review, quality assurance, billing, benefit management, practice management, and repricing; or

(B) Any other function or activity regulated by this subchapter; or

(ii) Provides, other than in the capacity of a member of the workforce of such covered entity, legal, actuarial, accounting, consulting, data aggregation (as defined in § 164.501 of this subchapter), management, administrative, accreditation, or financial services to or for such covered entity, or to or for an organized health care arrangement in which the covered entity participates, where the provision of the service involves the disclosure of individually identifiable health information from such covered entity or arrangement, or from another business associate of such covered entity or arrangement, to the person.

(2) A covered entity participating in an organized health care arrangement that performs a function or activity as described by paragraph (1)(i) of this definition for or on behalf of such organized health care arrangement, or that provides a service as described in paragraph (1)(ii) of this definition to or for such organized health care arrangement, does not, simply through the performance of such function or activity or the provision of such service, become a business associate of other covered entities participating in such organized health care arrangement.

(3) A covered entity may be a business associate of another covered entity.

Compliance date means the date by which a covered entity must comply with a standard, implementation specification, requirement, or modification adopted under this subchapter.

Covered entity means:

(1) A health plan.

(2) A health care clearinghouse.

(3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter.

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

EIN stands for the employer identification number assigned by the Internal Revenue Service, U.S. Department of the Treasury. The EIN is the taxpayer identifying number of an individual or other entity (whether or not an employer) assigned under one of the following:

(1) 26 U.S.C. 6011(b), which is the portion of the Internal Revenue Code dealing with identifying the taxpayer in tax returns and statements, or corresponding provisions of prior law.

(2) 26 U.S.C. 6109, which is the portion of the Internal Revenue Code dealing with identifying numbers in tax returns, statements, and other required documents.

Employer is defined as it is in 26 U.S.C. 3401(d).

Group health plan (also see definition of health plan in this section) means an employee welfare benefit plan (as defined in section 3(1) of the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. 1002(1)), including insured and self-insured plans, to the extent that the plan provides medical care (as defined in section 2791(a)(2) of the Public Health Service Act (PHS Act), 42 U.S.C. 300gg-91(a)(2)), including items and services paid for as medical care, to employees or their dependents directly or through insurance, reimbursement, or otherwise, that:

(1) Has 50 or more participants (as defined in section 3(7) of ERISA, 29 U.S.C. 1002(7)); or

(2) Is administered by an entity other than the employer that established and maintains the plan.

CMS stands for Centers for Medicare & Medicaid Services within the Department of Health and Human Services.

HHS stands for the Department of Health and Human Services.

Health care means care, services, or supplies related to the health of an individual. Health care includes, but is not limited to, the following:

(1) Preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and

(2) Sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription.

Health care clearinghouse means a public or private entity, including a billing service, repricing company, community health management information system or community health information system, and "value-added" networks and switches, that does either of the following functions:

(1) Processes or facilitates the processing of health information received from another entity in a nonstandard format or containing nonstandard data content into standard data elements or a standard transaction.

(2) Receives a standard transaction from another entity and processes or facilitates the processing of health information into nonstandard format or nonstandard data content for the receiving entity.

Health care provider means a provider of services (as defined in section 1861(u) of the Act, 42 U.S.C. 1395x(u)), a provider of medical or health services (as defined in section 1861(s) of the Act, 42 U.S.C. 1395x(s)), and any other person or organization who furnishes, bills, or is paid for health care in the normal course of business.

Health information means any information, whether oral or recorded in any form or medium, that:

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

(1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and

(2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

Health insurance issuer (as defined in section 2791(b)(2) of the PHS Act, 42 U.S.C. 300gg-91(b)(2) and used in the definition of health plan in this section) means an insurance company, insurance service, or insurance organization (including an HMO) that is licensed to engage in the business of insurance in a State and is subject to State law that regulates insurance. Such term does not include a group health plan.

Health maintenance organization (HMO) (as defined in section 2791(b)(3) of the PHS Act, 42 U.S.C. 300gg-91(b)(3) and used in the definition of health plan in this section) means a federally qualified HMO, an organization recognized as an HMO under State law, or a similar organization regulated for solvency under State law in the same manner and to the same extent as such an HMO.

Health plan means an individual or group plan that provides, or pays the cost of, medical care (as defined in section 2791(a)(2) of the PHS Act, 42 U.S.C. 300gg-91(a)(2)).

(1) Health plan includes the following, singly or in combination:

(i) A group health plan, as defined in this section.

(ii) A health insurance issuer, as defined in this section.

(iii) An HMO, as defined in this section.

(iv) Part A or Part B of the Medicare program under title XVIII of the Act.

(v) The Medicaid program under title XIX of the Act, 42 U.S.C. 1396, et seq.

(vi) An issuer of a Medicare supplemental policy (as defined in section 1882(g)(1) of the Act, 42 U.S.C. 1395ss(g)(1)).

(vii) An issuer of a long-term care policy, excluding a nursing home fixed- indemnity policy.

(viii) An employee welfare benefit plan or any other arrangement that is established or maintained for the purpose of offering or providing health benefits to the employees of two or more employers.

(ix) The health care program for active military personnel under title 10 of the United States Code.

(x) The veterans health care program under 38 U.S.C. chapter 17.

(xi) The Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) (as defined in 10 U.S.C. 1072(4)).

(xii) The Indian Health Service program under the Indian Health Care Improvement Act, 25 U.S.C. 1601, et seq.

(xiii) The Federal Employees Health Benefits Program under 5 U.S.C. 8902, et seq.

(xiv) An approved State child health plan under title XXI of the Act, providing benefits for child health assistance that meet the requirements of section 2103 of the Act, 42 U.S.C. 1397, et seq.

(xv) The Medicare+Choice program under Part C of title XVIII of the Act, 42 U.S.C. 1395w-21 through 1395w-28.

(xvi) A high risk pool that is a mechanism established under State law to provide health insurance coverage or comparable coverage to eligible individuals.

*These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.*

(xvii) Any other individual or group plan, or combination of individual or group plans, that provides or pays for the cost of medical care (as defined in section 2791(a)(2) of the PHS Act, 42 U.S.C. 300gg-91(a)(2)).

(2) Health plan excludes:

(i) Any policy, plan, or program to the extent that it provides, or pays for the cost of, excepted benefits that are listed in section 2791(c)(1) of the PHS Act, 42 U.S.C. 300gg-91(c)(1); and

(ii) A government-funded program (other than one listed in paragraph (1)(i)- (xvi) of this definition):

(A) Whose principal purpose is other than providing, or paying the cost of, health care; or

(B) Whose principal activity is:

(1) The direct provision of health care to persons; or

(2) The making of grants to fund the direct provision of health care to persons.

Implementation specification means specific requirements or instructions for implementing a standard.

Individually identifiable health information is information that is a subset of health information, including demographic information collected from an individual, and:

(1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

(2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and

(i) That identifies the individual; or

(ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

Modify or modification refers to a change adopted by the Secretary, through regulation, to a standard or an implementation specification.

Secretary means the Secretary of Health and Human Services or any other officer or employee of HHS to whom the authority involved has been delegated.

Small health plan means a health plan with annual receipts of $5 million or less.

Standard means a rule, condition, or requirement:

(1) Describing the following information for products, systems, services or practices:

(i) Classification of components.

(ii) Specification of materials, performance, or operations; or

(iii) Delineation of procedures; or

(2) With respect to the privacy of individually identifiable health information.

Standard setting organization (SSO) means an organization accredited by the American National Standards Institute that develops and maintains standards for information transactions or data elements, or any other standard that is necessary for, or will facilitate the implementation of, this part.

State refers to one of the following:

(1) For a health plan established or regulated by Federal law, State has the meaning set forth in the applicable section of the United States Code for such health plan.

(2) For all other purposes, State means any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

Islands, and Guam.

Trading partner agreement means an agreement related to the exchange of information in electronic transactions, whether the agreement is distinct or part of a larger agreement, between each party to the agreement. (For example, a trading partner agreement may specify, among other things, the duties and responsibilities of each party to the agreement in conducting a standard transaction.)

Transaction means the transmission of information between two parties to carry out financial or administrative activities related to health care. It includes the following types of information transmissions:

(1) Health care claims or equivalent encounter information.

(2) Health care payment and remittance advice.

(3) Coordination of benefits.

(4) Health care claim status.

(5) Enrollment and disenrollment in a health plan.

(6) Eligibility for a health plan.

(7) Health plan premium payments.

(8) Referral certification and authorization.

(9) First report of injury.

(10) Health claims attachments.

(11) Other transactions that the Secretary may prescribe by regulation.

Workforce means employees, volunteers, trainees, and other persons whose conduct, in the performance of work for a covered entity, is under the direct control of such entity, whether or not they are paid by the covered entity.

[67 FR 38019, May 31, 2002; 67 FR 53266, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 160.103

45 CFR § 160.103

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 160.104
45 C.F.R. § 160.104

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 160--GENERAL ADMINISTRATIVE REQUIREMENTS**
**SUBPART A--GENERAL PROVISIONS**
Current through January 22, 2003; 68 FR 3154

**§ 160.104 Modifications.**

(a) Except as provided in paragraph (b) of this section, the Secretary may adopt a modification to a standard or implementation specification adopted under this subchapter no more frequently than once every 12 months.

(b) The Secretary may adopt a modification at any time during the first year after the standard or implementation specification is initially adopted, if the Secretary determines that the modification is necessary to permit compliance with the standard or implementation specification.

(c) The Secretary will establish the compliance date for any standard or

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

implementation specification modified under this section.

(1) The compliance date for a modification is no earlier than 180 days after the effective date of the final rule in which the Secretary adopts the modification.

(2) The Secretary may consider the extent of the modification and the time needed to comply with the modification in determining the compliance date for the modification.

(3) The Secretary may extend the compliance date for small health plans, as the Secretary determines is appropriate.

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 160.104

45 CFR § 160.104

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 160.201
45 C.F.R. § 160.201

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 160--GENERAL ADMINISTRATIVE REQUIREMENTS**
**SUBPART B--PREEMPTION OF STATE LAW**
Current through January 22, 2003; 68 FR 3154

**§ 160.201 Applicability.**

The provisions of this subpart implement section 1178 of the Act, as added by section 262 of Public Law 104-191.

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 160.201

45 CFR § 160.201

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 160.202
45 C.F.R. § 160.202

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 160--GENERAL ADMINISTRATIVE REQUIREMENTS**
**SUBPART B--PREEMPTION OF STATE LAW**
Current through January 22, 2003; 68 FR 3154

**§ 160.202 Definitions.**

For purposes of this subpart, the following terms have the following meanings:

Contrary, when used to compare a provision of State law to a standard, requirement, or implementation specification adopted under this subchapter, means:

(1) A covered entity would find it impossible to comply with both the State and federal requirements; or

(2) The provision of State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of part C of title XI of the Act or section 264 of Pub.L. 104-191, as applicable.

More stringent means, in the context of a

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

comparison of a provision of State law and a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter, a State law that meets one or more of the following criteria:

(1) With respect to a use or disclosure, the law prohibits or restricts a use or disclosure in circumstances under which such use or disclosure otherwise would be permitted under this subchapter, except if the disclosure is:

(i) Required by the Secretary in connection with determining whether a covered entity is in compliance with this subchapter; or

(ii) To the individual who is the subject of the individually identifiable health information.

(2) With respect to the rights of an individual, who is the subject of the individually identifiable health information, regarding access to or amendment of individually identifiable health information, permits greater rights of access or amendment, as applicable.

(3) With respect to information to be provided to an individual who is the subject of the individually identifiable health information about a use, a disclosure, rights, and remedies, provides the greater amount of information.

(4) With respect to the form, substance, or the need for express legal permission from an individual, who is the subject of the individually identifiable health information, for use or disclosure of individually identifiable health information, provides requirements that narrow the scope or duration, increase the privacy protections afforded (such as by expanding the criteria for), or reduce the coercive effect of the circumstances surrounding the express legal permission, as applicable.

(5) With respect to recordkeeping or requirements relating to accounting of disclosures, provides for the retention or reporting of more detailed information or for a longer duration.

(6) With respect to any other matter, provides greater privacy protection for the individual who is the subject of the individually identifiable health information.

Relates to the privacy of individually identifiable health information means, with respect to a State law, that the State law has the specific purpose of protecting the privacy of health information or affects the privacy of health information in a direct, clear, and substantial way.

State law means a constitution, statute, regulation, rule, common law, or other State action having the force and effect of law.

[67 FR 53266, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 160.202

45 CFR § 160.202

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 160.203
45 C.F.R. § 160.203

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 160--GENERAL ADMINISTRATIVE REQUIREMENTS**
**SUBPART B--PREEMPTION OF STATE LAW**
Current through January 22, 2003; 68 FR 3154

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

**§ 160.203 General rule and exceptions.**

A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met:

(a) A determination is made by the Secretary under § 160.204 that the provision of State law:

(1) Is necessary:

(i) To prevent fraud and abuse related to the provision of or payment for health care;

(ii) To ensure appropriate State regulation of insurance and health plans to the extent expressly authorized by statute or regulation;

(iii) For State reporting on health care delivery or costs; or

(iv) For purposes of serving a compelling need related to public health, safety, or welfare, and, if a standard, requirement, or implementation specification under part 164 of this subchapter is at issue, if the Secretary determines that the intrusion into privacy is warranted when balanced against the need to be served; or

(2) Has as its principal purpose the regulation of the manufacture, registration, distribution, dispensing, or other control of any controlled substances (as defined in 21 U.S.C. 802), or that is deemed a controlled substance by State law.

(b) The provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.

(c) The provision of State law, including State procedures established under such law, as applicable, provides for the reporting of disease or injury, child abuse, birth, or death, or for the conduct of public health surveillance, investigation, or intervention.

(d) The provision of State law requires a health plan to report, or to provide access to, information for the purpose of management audits, financial audits, program monitoring and evaluation, or the licensure or certification of facilities or individuals.

[67 FR 53266, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 160.203

45 CFR § 160.203

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 160.204
45 C.F.R. § 160.204

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 160--GENERAL ADMINISTRATIVE REQUIREMENTS**
**SUBPART B--PREEMPTION OF STATE LAW**
Current through January 22, 2003; 68 FR 3154

**§ 160.204 Process for requesting exception determinations.**

(a) A request to except a provision of State law from preemption under § 160.203(a) may be submitted to the Secretary. A request by a

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.102
45 C.F.R. § 164.102

**CODE OF FEDERAL REGULATIONS
TITLE 45--PUBLIC WELFARE
SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES
SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS
PART 164--SECURITY AND PRIVACY
SUBPART A--GENERAL PROVISIONS**
Current through January 22, 2003; 68 FR 3154

**§ 164.102 Statutory basis.**

The provisions of this part are adopted pursuant to the Secretary's authority to prescribe standards, requirements, and implementation specifications under part C of title XI of the Act and section 264 of Public Law 104-191.

[67 FR 53266, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.102

45 CFR § 164.102

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.104
45 C.F.R. § 164.104

**CODE OF FEDERAL REGULATIONS
TITLE 45--PUBLIC WELFARE
SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES
SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS
PART 164--SECURITY AND PRIVACY
SUBPART A--GENERAL PROVISIONS**
Current through January 22, 2003; 68 FR 3154

**§ 164.104 Applicability.**

Except as otherwise provided, the provisions of this part apply to covered entities: health plans, health care clearinghouses, and health care providers who transmit health information in electronic form in connection with any transaction referred to in section 1173(a)(1) of the Act.

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.104

45 CFR § 164.104

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.106
45 C.F.R. § 164.106

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

whom it has granted authority, that is responsible for public health matters as part of its official mandate.

Required by law means a mandate contained in law that compels an entity to make a use or disclosure of protected health information and that is enforceable in a court of law. Required by law includes, but is not limited to, court orders and court-ordered warrants; subpoenas or summons issued by a court, grand jury, a governmental or tribal inspector general, or an administrative body authorized to require the production of information; a civil or an authorized investigative demand; Medicare conditions of participation with respect to health care providers participating in the program; and statutes or regulations that require the production of information, including statutes or regulations that require such information if payment is sought under a government program providing public benefits.

Research means a systematic investigation, including research development, testing, and evaluation, designed to develop or contribute to generalizable knowledge.

Treatment means the provision, coordination, or management of health care and related services by one or more health care providers, including the coordination or management of health care by a health care provider with a third party; consultation between health care providers relating to a patient; or the referral of a patient for health care from one health care provider to another.

Use means, with respect to individually identifiable health information, the sharing, employment, application, utilization, examination, or analysis of such information within an entity that maintains such information.

[67 FR 53266, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.501

45 CFR § 164.501

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.502
45 C.F.R. § 164.502

**CODE OF FEDERAL REGULATIONS
TITLE 45--PUBLIC WELFARE
SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES
SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS
PART 164--SECURITY AND PRIVACY
SUBPART E--PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION**

Current through January 22, 2003; 68 FR 3154

**§ 164.502 Uses and disclosures of protected health information: general rules.**

(a) Standard. A covered entity may not use or disclose protected health information, except as permitted or required by this subpart or by subpart C of part 160 of this subchapter.

(1) Permitted uses and disclosures. A covered entity is permitted to use or disclose protected health information as follows:

(i) To the individual;

(ii) For treatment, payment, or health care operations, as permitted by and in compliance with § 164.506;

(iii) Incident to a use or disclosure otherwise permitted or required by this subpart,

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

provided that the covered entity has complied with the applicable requirements of § 164.502(b), § 164.514(d), and § 164.530(c) with respect to such otherwise permitted or required use or disclosure;

(iv) Pursuant to and in compliance with a valid authorization under § 164.508;

(v) Pursuant to an agreement under, or as otherwise permitted by, § 164.510; and

(vi) As permitted by and in compliance with this section, § 164.512, or § 164.514(e), (f), or (g).

(2) Required disclosures. A covered entity is required to disclose protected health information:

(i) To an individual, when requested under, and required by § 164.524 or § 164.528; and

(ii) When required by the Secretary under subpart C of part 160 of this subchapter to investigate or determine the covered entity's compliance with this subpart.

(b) Standard: Minimum necessary.

(1) Minimum necessary applies. When using or disclosing protected health information or when requesting protected health information from another covered entity, a covered entity must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request.

(2) Minimum necessary does not apply. This requirement does not apply to:

(i) Disclosures to or requests by a health care provider for treatment;

(ii) Uses or disclosures made to the individual, as permitted under paragraph (a)(1)(i) of this section or as required by paragraph (a)(2)(i) of this section;

(iii) Uses or disclosures made pursuant to an authorization under § 164.508;

(iv) Disclosures made to the Secretary in accordance with subpart C of part 160 of this subchapter;

(v) Uses or disclosures that are required by law, as described by § 164.512(a); and

(vi) Uses or disclosures that are required for compliance with applicable requirements of this subchapter.

(c) Standard: Uses and disclosures of protected health information subject to an agreed upon restriction. A covered entity that has agreed to a restriction pursuant to § 164.522(a)(1) may not use or disclose the protected health information covered by the restriction in violation of such restriction, except as otherwise provided in § 164.522(a).

(d) Standard: Uses and disclosures of de-identified protected health information.

(1) Uses and disclosures to create de-identified information. A covered entity may use protected health information to create information that is not individually identifiable health information or disclose protected health information only to a business associate for such purpose, whether or not the de-identified information is to be used by the covered entity.

(2) Uses and disclosures of de-identified information. Health information that meets the standard and implementation specifications for de-identification under § 164.514(a) and (b) is considered not to be individually identifiable health information, i.e., de-identified. The requirements of this subpart do not apply to information that has been de-identified in accordance with the applicable requirements of § 164.514, provided that:

(i) Disclosure of a code or other means of record identification designed to enable coded

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

created or received the protected health information;

(iv) Section 164.504 relating to the organizational requirements for covered entities, including the designation of health care components of a covered entity;

(v) Section 164.512 relating to uses and disclosures for which individual authorization or an opportunity to agree or object is not required, except that a clearinghouse is prohibited from using or disclosing protected health information other than as permitted in the business associate contract under which it created or received the protected health information;

(vi) Section 164.532 relating to transition requirements; and

(vii) Section 164.534 relating to compliance dates for initial implementation of the privacy standards.

(2) When a health care clearinghouse creates or receives protected health information other than as a business associate of a covered entity, the clearinghouse must comply with all of the standards, requirements, and implementation specifications of this subpart.

(c) The standards, requirements, and implementation specifications of this subpart do not apply to the Department of Defense or to any other federal agency, or non-governmental organization acting on its behalf, when providing health care to overseas foreign national beneficiaries.

[67 FR 53266, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.500

45 CFR § 164.500

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.501
45 C.F.R. § 164.501

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 164--SECURITY AND PRIVACY**
**SUBPART E--PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION**
Current through January 22, 2003; 68 FR 3154

**§ 164.501 Definitions.**

As used in this subpart, the following terms have the following meanings:

Correctional institution means any penal or correctional facility, jail, reformatory, detention center, work farm, halfway house, or residential community program center operated by, or under contract to, the United States, a State, a territory, a political subdivision of a State or territory, or an Indian tribe, for the confinement or rehabilitation of persons charged with or convicted of a criminal offense or other persons held in lawful custody. Other persons held in lawful custody includes juvenile offenders adjudicated delinquent, aliens detained awaiting deportation, persons committed to mental institutions through the criminal justice system, witnesses, or others awaiting charges or trial.

Covered functions means those functions of a covered entity the performance of which makes the entity a health plan, health care provider, or health care clearinghouse.

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

Data aggregation means, with respect to protected health information created or received by a business associate in its capacity as the business associate of a covered entity, the combining of such protected health information by the business associate with the protected health information received by the business associate in its capacity as a business associate of another covered entity, to permit data analyses that relate to the health care operations of the respective covered entities.

Designated record set means:

(1) A group of records maintained by or for a covered entity that is:

(i) The medical records and billing records about individuals maintained by or for a covered health care provider;

(ii) The enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan; or

(iii) Used, in whole or in part, by or for the covered entity to make decisions about individuals.

(2) For purposes of this paragraph, the term record means any item, collection, or grouping of information that includes protected health information and is maintained, collected, used, or disseminated by or for a covered entity.

Direct treatment relationship means a treatment relationship between an individual and a health care provider that is not an indirect treatment relationship.

Disclosure means the release, transfer, provision of access to, or divulging in any other manner of information outside the entity holding the information.

Health care operations means any of the following activities of the covered entity to the extent that the activities are related to covered functions:

(1) Conducting quality assessment and improvement activities, including outcomes evaluation and development of clinical guidelines, provided that the obtaining of generalizable knowledge is not the primary purpose of any studies resulting from such activities; population-based activities relating to improving health or reducing health care costs, protocol development, case management and care coordination, contacting of health care providers and patients with information about treatment alternatives; and related functions that do not include treatment;

(2) Reviewing the competence or qualifications of health care professionals, evaluating practitioner and provider performance, health plan performance, conducting training programs in which students, trainees, or practitioners in areas of health care learn under supervision to practice or improve their skills as health care providers, training of non-health care professionals, accreditation, certification, licensing, or credentialing activities;

(3) Underwriting, premium rating, and other activities relating to the creation, renewal or replacement of a contract of health insurance or health benefits, and ceding, securing, or placing a contract for reinsurance of risk relating to claims for health care (including stop-loss insurance and excess of loss insurance), provided that the requirements of § 164.514(g) are met, if applicable;

(4) Conducting or arranging for medical review, legal services, and auditing functions, including fraud and abuse detection and compliance programs;

(5) Business planning and development, such as conducting cost-management and planning-related analyses related to managing and operating the entity, including formulary development and administration, development or improvement of methods of payment or

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

coverage policies; and

(6) Business management and general administrative activities of the entity, including, but not limited to:

(i) Management activities relating to implementation of and compliance with the requirements of this subchapter;

(ii) Customer service, including the provision of data analyses for policy holders, plan sponsors, or other customers, provided that protected health information is not disclosed to such policy holder, plan sponsor, or customer.

(iii) Resolution of internal grievances;

(iv) The sale, transfer, merger, or consolidation of all or part of the covered entity with another covered entity, or an entity that following such activity will become a covered entity and due diligence related to such activity; and

(v) Consistent with the applicable requirements of § 164.514, creating de-identified health information or a limited data set, and fundraising for the benefit of the covered entity.

Health oversight agency means an agency or authority of the United States, a State, a territory, a political subdivision of a State or territory, or an Indian tribe, or a person or entity acting under a grant of authority from or contract with such public agency, including the employees or agents of such public agency or its contractors or persons or entities to whom it has granted authority, that is authorized by law to oversee the health care system (whether public or private) or government programs in which health information is necessary to determine eligibility or compliance, or to enforce civil rights laws for which health information is relevant.

Indirect treatment relationship means a relationship between an individual and a health care provider in which:

(1) The health care provider delivers health care to the individual based on the orders of another health care provider; and

(2) The health care provider typically provides services or products, or reports the diagnosis or results associated with the health care, directly to another health care provider, who provides the services or products or reports to the individual.

Individual means the person who is the subject of protected health information.

Inmate means a person incarcerated in or otherwise confined to a correctional institution.

Law enforcement official means an officer or employee of any agency or authority of the United States, a State, a territory, a political subdivision of a State or territory, or an Indian tribe, who is empowered by law to:

(1) Investigate or conduct an official inquiry into a potential violation of law; or

(2) Prosecute or otherwise conduct a criminal, civil, or administrative proceeding arising from an alleged violation of law.

Marketing means:

(1) To make a communication about a product or service that encourages recipients of the communication to purchase or use the product or service, unless the communication is made:

(i) To describe a health-related product or service (or payment for such product or service) that is provided by, or included in a plan of benefits of, the covered entity making the communication, including communications about: the entities participating in a health care provider network or health plan network; replacement of, or

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

enhancements to, a health plan; and health-related products or services available only to a health plan enrollee that add value to, but are not part of, a plan of benefits.

(ii) For treatment of the individual; or

(iii) For case management or care coordination for the individual, or to direct or recommend alternative treatments, therapies, health care providers, or settings of care to the individual.

(2) An arrangement between a covered entity and any other entity whereby the covered entity discloses protected health information to the other entity, in exchange for direct or indirect remuneration, for the other entity or its affiliate to make a communication about its own product or service that encourages recipients of the communication to purchase or use that product or service.

Organized health care arrangement means:

(1) A clinically integrated care setting in which individuals typically receive health care from more than one health care provider;

(2) An organized system of health care in which more than one covered entity participates, and in which the participating covered entities:

(i) Hold themselves out to the public as participating in a joint arrangement; and

(ii) Participate in joint activities that include at least one of the following:

(A) Utilization review, in which health care decisions by participating covered entities are reviewed by other participating covered entities or by a third party on their behalf;

(B) Quality assessment and improvement activities, in which treatment provided by participating covered entities is assessed by other participating covered entities or by a third party on their behalf; or

(C) Payment activities, if the financial risk for delivering health care is shared, in part or in whole, by participating covered entities through the joint arrangement and if protected health information created or received by a covered entity is reviewed by other participating covered entities or by a third party on their behalf for the purpose of administering the sharing of financial risk.

(3) A group health plan and a health insurance issuer or HMO with respect to such group health plan, but only with respect to protected health information created or received by such health insurance issuer or HMO that relates to individuals who are or who have been participants or beneficiaries in such group health plan;

(4) A group health plan and one or more other group health plans each of which are maintained by the same plan sponsor; or

(5) The group health plans described in paragraph (4) of this definition and health insurance issuers or HMOs with respect to such group health plans, but only with respect to protected health information created or received by such health insurance issuers or HMOs that relates to individuals who are or have been participants or beneficiaries in any of such group health plans.

Payment means:

(1) The activities undertaken by:

(i) A health plan to obtain premiums or to determine or fulfill its responsibility for coverage and provision of benefits under the health plan; or

(ii) A health care provider or health plan to obtain or provide reimbursement for the provision of health care; and

(2) The activities in paragraph (1) of this definition relate to the individual to whom health care is provided and include, but are not limited to:

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

(i) Determinations of eligibility or coverage (including coordination of benefits or the determination of cost sharing amounts), and adjudication or subrogation of health benefit claims;

(ii) Risk adjusting amounts due based on enrollee health status and demographic characteristics;

(iii) Billing, claims management, collection activities, obtaining payment under a contract for reinsurance (including stop-loss insurance and excess of loss insurance), and related health care data processing;

(iv) Review of health care services with respect to medical necessity, coverage under a health plan, appropriateness of care, or justification of charges;

(v) Utilization review activities, including precertification and preauthorization of services, concurrent and retrospective review of services; and

(vi) Disclosure to consumer reporting agencies of any of the following protected health information relating to collection of premiums or reimbursement:

(A) Name and address;

(B) Date of birth;

(C) Social security number;

(D) Payment history;

(E) Account number; and

(F) Name and address of the health care provider and/or health plan.

Plan sponsor is defined as defined at section 3(16)(B) of ERISA, 29 U.S.C. 1002(16)(B).

Protected health information means individually identifiable health information:

(1) Except as provided in paragraph (2) of this definition, that is:

(i) Transmitted by electronic media;

(ii) Maintained in any medium described in the definition of electronic media at § 162.103 of this subchapter; or

(iii) Transmitted or maintained in any other form or medium.

(2) Protected health information excludes individually identifiable health information in:

(i) Education records covered by the Family Educational Rights and Privacy Act, as amended, 20 U.S.C. 1232g;

(ii) Records described at 20 U.S.C. 1232g(a)(4)(B)(iv); and

(iii) Employment records held by a covered entity in its role as employer.

Psychotherapy notes means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's medical record. Psychotherapy notes excludes medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: Diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date.

Public health authority means an agency or authority of the United States, a State, a territory, a political subdivision of a State or territory, or an Indian tribe, or a person or entity acting under a grant of authority from or contract with such public agency, including the employees or agents of such public agency or its contractors or persons or entities to

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

or otherwise de-identified information to be re-identified constitutes disclosure of protected health information; and

(ii) If de-identified information is re-identified, a covered entity may use or disclose such re-identified information only as permitted or required by this subpart.

(e)(1) Standard: Disclosures to business associates.

(i) A covered entity may disclose protected health information to a business associate and may allow a business associate to create or receive protected health information on its behalf, if the covered entity obtains satisfactory assurance that the business associate will appropriately safeguard the information.

(ii) This standard does not apply:

(A) With respect to disclosures by a covered entity to a health care provider concerning the treatment of the individual;

(B) With respect to disclosures by a group health plan or a health insurance issuer or HMO with respect to a group health plan to the plan sponsor, to the extent that the requirements of § 164.504(f) apply and are met; or

(C) With respect to uses or disclosures by a health plan that is a government program providing public benefits, if eligibility for, or enrollment in, the health plan is determined by an agency other than the agency administering the health plan, or if the protected health information used to determine enrollment or eligibility in the health plan is collected by an agency other than the agency administering the health plan, and such activity is authorized by law, with respect to the collection and sharing of individually identifiable health information for the performance of such functions by the health plan and the agency other than the agency administering the health plan.

(iii) A covered entity that violates the satisfactory assurances it provided as a business associate of another covered entity will be in noncompliance with the standards, implementation specifications, and requirements of this paragraph and § 164.504(e).

(2) Implementation specification: documentation. A covered entity must document the satisfactory assurances required by paragraph (e)(1) of this section through a written contract or other written agreement or arrangement with the business associate that meets the applicable requirements of § 164.504(e).

(f) Standard: Deceased individuals. A covered entity must comply with the requirements of this subpart with respect to the protected health information of a deceased individual.

(g)(1) Standard: Personal representatives. As specified in this paragraph, a covered entity must, except as provided in paragraphs (g)(3) and (g)(5) of this section, treat a personal representative as the individual for purposes of this subchapter.

(2) Implementation specification: adults and emancipated minors. If under applicable law a person has authority to act on behalf of an individual who is an adult or an emancipated minor in making decisions related to health care, a covered entity must treat such person as a personal representative under this subchapter, with respect to protected health information relevant to such personal representation.

(3)(i) Implementation specification: unemancipated minors. If under applicable law a parent, guardian, or other person acting in loco parentis has authority to act on behalf of an individual who is an unemancipated minor in making decisions related to health care, a covered entity must treat such person as a personal representative under this subchapter, with respect to protected health

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

information relevant to such personal representation, except that such person may not be a personal representative of an unemancipated minor, and the minor has the authority to act as an individual, with respect to protected health information pertaining to a health care service, if:

(A) The minor consents to such health care service; no other consent to such health care service is required by law, regardless of whether the consent of another person has also been obtained; and the minor has not requested that such person be treated as the personal representative;

(B) The minor may lawfully obtain such health care service without the consent of a parent, guardian, or other person acting in loco parentis, and the minor, a court, or another person authorized by law consents to such health care service; or

(C) A parent, guardian, or other person acting in loco parentis assents to an agreement of confidentiality between a covered health care provider and the minor with respect to such health care service.

(ii) Notwithstanding the provisions of paragraph (g)(3)(i) of this section:

(A) If, and to the extent, permitted or required by an applicable provision of State or other law, including applicable case law, a covered entity may disclose, or provide access in accordance with § 164.524 to, protected health information about an unemancipated minor to a parent, guardian, or other person acting in loco parentis;

(B) If, and to the extent, prohibited by an applicable provision of State or other law, including applicable case law, a covered entity may not disclose, or provide access in accordance with § 164.524 to, protected health information about an unemancipated minor to a parent, guardian, or other person acting in loco parentis; and

(C) Where the parent, guardian, or other person acting in loco parentis, is not the personal representative under paragraphs (g)(3)(i)(A), (B), or (C) of this section and where there is no applicable access provision under State or other law, including case law, a covered entity may provide or deny access under § 164.524 to a parent, guardian, or other person acting in loco parentis, if such action is consistent with State or other applicable law, provided that such decision must be made by a licensed health care professional, in the exercise of professional judgment.

(4) Implementation specification: Deceased individuals. If under applicable law an executor, administrator, or other person has authority to act on behalf of a deceased individual or of the individual's estate, a covered entity must treat such person as a personal representative under this subchapter, with respect to protected health information relevant to such personal representation.

(5) Implementation specification: Abuse, neglect, endangerment situations. Notwithstanding a State law or any requirement of this paragraph to the contrary, a covered entity may elect not to treat a person as the personal representative of an individual if:

(i) The covered entity has a reasonable belief that:

(A) The individual has been or may be subjected to domestic violence, abuse, or neglect by such person; or

(B) Treating such person as the personal representative could endanger the individual; and

(ii) The covered entity, in the exercise of professional judgment, decides that it is not in the best interest of the individual to treat the person as the individual's personal representative.

(h) Standard: Confidential communications.

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

A covered health care provider or health plan must comply with the applicable requirements of § 164.522(b) in communicating protected health information.

(i) Standard: Uses and disclosures consistent with notice. A covered entity that is required by § 164.520 to have a notice may not use or disclose protected health information in a manner inconsistent with such notice. A covered entity that is required by § 164.520(b)(1)(iii) to include a specific statement in its notice if it intends to engage in an activity listed in § 164.520(b)(1)(iii)(A)-(C), may not use or disclose protected health information for such activities, unless the required statement is included in the notice.

(j) Standard: Disclosures by whistleblowers and workforce member crime victims.

(1) Disclosures by whistleblowers. A covered entity is not considered to have violated the requirements of this subpart if a member of its workforce or a business associate discloses protected health information, provided that:

(i) The workforce member or business associate believes in good faith that the covered entity has engaged in conduct that is unlawful or otherwise violates professional or clinical standards, or that the care, services, or conditions provided by the covered entity potentially endangers one or more patients, workers, or the public; and

(ii) The disclosure is to:

(A) A health oversight agency or public health authority authorized by law to investigate or otherwise oversee the relevant conduct or conditions of the covered entity or to an appropriate health care accreditation organization for the purpose of reporting the allegation of failure to meet professional standards or misconduct by the covered entity; or

(B) An attorney retained by or on behalf of the workforce member or business associate for the purpose of determining the legal options of the workforce member or business associate with regard to the conduct described in paragraph (j)(1)(i) of this section.

(2) Disclosures by workforce members who are victims of a crime. A covered entity is not considered to have violated the requirements of this subpart if a member of its workforce who is the victim of a criminal act discloses protected health information to a law enforcement official, provided that:

(i) The protected health information disclosed is about the suspected perpetrator of the criminal act; and

(ii) The protected health information disclosed is limited to the information listed in § 164.512(f)(2)(i).

[67 FR 53267, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.502

45 CFR § 164.502

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.504
45 C.F.R. § 164.504

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

[67 FR 53267, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.504

45 CFR § 164.504

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.506
45 C.F.R. § 164.506

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 164--SECURITY AND PRIVACY**
**SUBPART E--PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION**
Current through January 22, 2003; 68 FR 3154

**§ 164.506 Uses and disclosures to carry out treatment, payment, or health care operations.**

(a) Standard: Permitted uses and disclosures. Except with respect to uses or disclosures that require an authorization under § 164.508(a)(2) and (3), a covered entity may use or disclose protected health information for treatment, payment, or health care operations as set forth in paragraph (c) of this section, provided that such use or disclosure is consistent with other applicable requirements of this subpart.

(b) Standard: Consent for uses and disclosures permitted.

(1) A covered entity may obtain consent of the individual to use or disclose protected health information to carry out treatment, payment, or health care operations.

(2) Consent, under paragraph (b) of this section, shall not be effective to permit a use or disclosure of protected health information when an authorization, under § 164.508, is required or when another condition must be met for such use or disclosure to be permissible under this subpart.

(c) Implementation specifications: Treatment, payment, or health care operations.

(1) A covered entity may use or disclose protected health information for its own treatment, payment, or health care operations.

(2) A covered entity may disclose protected health information for treatment activities of a health care provider.

(3) A covered entity may disclose protected health information to another covered entity or a health care provider for the payment activities of the entity that receives the information.

(4) A covered entity may disclose protected health information to another covered entity for health care operations activities of the entity that receives the information, if each entity either has or had a relationship with the individual who is the subject of the protected health information being requested, the protected health information pertains to such relationship, and the disclosure is:

(i) For a purpose listed in paragraph (1) or (2) of the definition of health care operations; or

(ii) For the purpose of health care fraud and abuse detection or compliance.

(5) A covered entity that participates in an organized health care arrangement may disclose protected health information about an individual to another covered entity that participates in the organized health care arrangement for any health care operations

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

activities of the organized health care arrangement.

[67 FR 53268, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.506

45 CFR § 164.506

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.508
45 C.F.R. § 164.508

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 164--SECURITY AND PRIVACY**
**SUBPART E--PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION**
Current through January 22, 2003; 68 FR 3154

**§ 164.508 Uses and disclosures for which an authorization is required.**

(a) Standard: authorizations for uses and disclosures.--

(1) Authorization required: general rule. Except as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section. When a covered entity obtains or receives a valid authorization for its use or disclosure of protected health information, such use or disclosure must be consistent with such authorization.

(2) Authorization required: psychotherapy notes. Notwithstanding any provision of this subpart, other than the transition provisions in § 164.532, a covered entity must obtain an authorization for any use or disclosure of psychotherapy notes, except:

(i) To carry out the following treatment, payment, or health care operations:

(A) Use by the originator of the psychotherapy notes for treatment;

(B) Use or disclosure by the covered entity for its own training programs in which students, trainees, or practitioners in mental health learn under supervision to practice or improve their skills in group, joint, family, or individual counseling; or

(C) Use or disclosure by the covered entity to defend itself in a legal action or other proceeding brought by the individual; and

(ii) A use or disclosure that is required by § 164.502(a)(2)(ii) or permitted by § 164.512(a); § 164.512(d) with respect to the oversight of the originator of the psychotherapy notes; § 164.512(g)(1); or § 164.512(j)(1)(i).

(3) Authorization required: Marketing.

(i) Notwithstanding any provision of this subpart, other than the transition provisions in § 164.532, a covered entity must obtain an authorization for any use or disclosure of protected health information for marketing, except if the communication is in the form of:

(A) A face-to-face communication made by a covered entity to an individual; or

(B) A promotional gift of nominal value provided by the covered entity.

(ii) If the marketing involves direct or indirect remuneration to the covered entity

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

from a third party, the authorization must state that such remuneration is involved.

(b) Implementation specifications: general requirements.--

(1) Valid authorizations.

(i) A valid authorization is a document that meets the requirements in paragraphs (a)(3)(ii), (c)(1), and (c)(2) of this section, as applicable.

(ii) A valid authorization may contain elements or information in addition to the elements required by this section, provided that such additional elements or information are not inconsistent with the elements required by this section.

(2) Defective authorizations. An authorization is not valid, if the document submitted has any of the following defects:

(i) The expiration date has passed or the expiration event is known by the covered entity to have occurred;

(ii) The authorization has not been filled out completely, with respect to an element described by paragraph (c) of this section, if applicable;

(iii) The authorization is known by the covered entity to have been revoked;

(iv) The authorization violates paragraph (b)(3) or (4) of this section, if applicable;

(v) Any material information in the authorization is known by the covered entity to be false.

(3) Compound authorizations. An authorization for use or disclosure of protected health information may not be combined with any other document to create a compound authorization, except as follows:

(i) An authorization for the use or disclosure of protected health information for a research study may be combined with any other type of written permission for the same research study, including another authorization for the use or disclosure of protected health information for such research or a consent to participate in such research;

(ii) An authorization for a use or disclosure of psychotherapy notes may only be combined with another authorization for a use or disclosure of psychotherapy notes;

(iii) An authorization under this section, other than an authorization for a use or disclosure of psychotherapy notes, may be combined with any other such authorization under this section, except when a covered entity has conditioned the provision of treatment, payment, enrollment in the health plan, or eligibility for benefits under paragraph (b)(4) of this section on the provision of one of the authorizations.

(4) Prohibition on conditioning of authorizations. A covered entity may not condition the provision to an individual of treatment, payment, enrollment in the health plan, or eligibility for benefits on the provision of an authorization, except:

(i) A covered health care provider may condition the provision of research- related treatment on provision of an authorization for the use or disclosure of protected health information for such research under this section;

(ii) A health plan may condition enrollment in the health plan or eligibility for benefits on provision of an authorization requested by the health plan prior to an individual's enrollment in the health plan, if:

(A) The authorization sought is for the health plan's eligibility or enrollment determinations relating to the individual or for its underwriting or risk rating determinations; and

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

(B) The authorization is not for a use or disclosure of psychotherapy notes under paragraph (a)(2) of this section; and

(iii) A covered entity may condition the provision of health care that is solely for the purpose of creating protected health information for disclosure to a third party on provision of an authorization for the disclosure of the protected health information to such third party.

(5) Revocation of authorizations. An individual may revoke an authorization provided under this section at any time, provided that the revocation is in writing, except to the extent that:

(i) The covered entity has taken action in reliance thereon; or

(ii) If the authorization was obtained as a condition of obtaining insurance coverage, other law provides the insurer with the right to contest a claim under the policy or the policy itself.

(6) Documentation. A covered entity must document and retain any signed authorization under this section as required by § 164.530(j).

(c) Implementation specifications: Core elements and requirements.--

(1) Core elements. A valid authorization under this section must contain at least the following elements:

(i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv) A description of each purpose of the requested use or disclosure. The statement "at the request of the individual" is a sufficient description of the purpose when an individual initiates the authorization and does not, or elects not to, provide a statement of the purpose.

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. The statement "end of the research study," "none," or similar language is sufficient if the authorization is for a use or disclosure of protected health information for research, including for the creation and maintenance of a research database or research repository.

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

(2) Required statements. In addition to the core elements, the authorization must contain statements adequate to place the individual on notice of all of the following:

(i) The individual's right to revoke the authorization in writing, and either:

(A) The exceptions to the right to revoke and a description of how the individual may revoke the authorization; or

(B) To the extent that the information in paragraph (c)(2)(i)(A) of this section is included in the notice required by § 164.520, a reference to the covered entity's notice.

(ii) The ability or inability to condition treatment, payment, enrollment or eligibility for benefits on the authorization, by stating either:

(A) The covered entity may not condition

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

treatment, payment, enrollment or eligibility for benefits on whether the individual signs the authorization when the prohibition on conditioning of authorizations in paragraph (b)(4) of this section applies; or

(B) The consequences to the individual of a refusal to sign the authorization when, in accordance with paragraph (b)(4) of this section, the covered entity can condition treatment, enrollment in the health plan, or eligibility for benefits on failure to obtain such authorization.

(iii) The potential for information disclosed pursuant to the authorization to be subject to redisclosure by the recipient and no longer be protected by this subpart.

(3) Plain language requirement. The authorization must be written in plain language.

(4) Copy to the individual. If a covered entity seeks an authorization from an individual for a use or disclosure of protected health information, the covered entity must provide the individual with a copy of the signed authorization.

[67 FR 53268, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.508

45 CFR § 164.508

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.510
45 C.F.R. § 164.510

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 164--SECURITY AND PRIVACY**
**SUBPART E--PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION**
Current through January 22, 2003; 68 FR 3154

**§ 164.510 Uses and disclosures requiring an opportunity for the individual to agree or to object.**

A covered entity may use or disclose protected health information, provided that the individual is informed in advance of the use or disclosure and has the opportunity to agree to or prohibit or restrict the use or disclosure, in accordance with the applicable requirements of this section. The covered entity may orally inform the individual of and obtain the individual's oral agreement or objection to a use or disclosure permitted by this section.

(a) Standard: use and disclosure for facility directories.

(1) Permitted uses and disclosure. Except when an objection is expressed in accordance with paragraphs (a)(2) or (3) of this section, a covered health care provider may:

(i) Use the following protected health information to maintain a directory of individuals in its facility:

(A) The individual's name;

(B) The individual's location in the covered

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

health care provider's facility;

(C) The individual's condition described in general terms that does not communicate specific medical information about the individual; and

(D) The individual's religious affiliation; and

(ii) Disclose for directory purposes such information:

(A) To members of the clergy; or

(B) Except for religious affiliation, to other persons who ask for the individual by name.

(2) Opportunity to object. A covered health care provider must inform an individual of the protected health information that it may include in a directory and the persons to whom it may disclose such information (including disclosures to clergy of information regarding religious affiliation) and provide the individual with the opportunity to restrict or prohibit some or all of the uses or disclosures permitted by paragraph (a)(1) of this section.

(3) Emergency circumstances.

(i) If the opportunity to object to uses or disclosures required by paragraph (a)(2) of this section cannot practicably be provided because of the individual's incapacity or an emergency treatment circumstance, a covered health care provider may use or disclose some or all of the protected health information permitted by paragraph (a)(1) of this section for the facility's directory, if such disclosure is:

(A) Consistent with a prior expressed preference of the individual, if any, that is known to the covered health care provider; and

(B) In the individual's best interest as etermined by the covered health care provider, in the exercise of professional judgment.

(ii) The covered health care provider must inform the individual and provide an opportunity to object to uses or disclosures for directory purposes as required by paragraph (a)(2) of this section when it becomes practicable to do so.

(b) Standard: uses and disclosures for involvement in the individual's care and notification purposes.

(1) Permitted uses and disclosures.

(i) A covered entity may, in accordance with paragraphs (b)(2) or (3) of this section, disclose to a family member, other relative, or a close personal friend of the individual, or any other person identified by the individual, the protected health information directly relevant to such person's involvement with the individual's care or payment related to the individual's health care.

(ii) A covered entity may use or disclose protected health information to notify, or assist in the notification of (including identifying or locating), a family member, a personal representative of the individual, or another person responsible for the care of the individual of the individual's location, general condition, or death. Any such use or disclosure of protected health information for such notification purposes must be in accordance with paragraphs (b)(2), (3), or (4) of this section, as applicable.

(2) Uses and disclosures with the individual present. If the individual is present for, or otherwise available prior to, a use or disclosure permitted by paragraph (b)(1) of this section and has the capacity to make health care decisions, the covered entity may use or disclose the protected health information if it:

(i) Obtains the individual's agreement;

(ii) Provides the individual with the opportunity to object to the disclosure, and the individual does not express an objection; or

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

(iii) Reasonably infers from the circumstances, based the exercise of professional judgment, that the individual does not object to the disclosure.

(3) Limited uses and disclosures when the individual is not present. If the individual is not present, or the opportunity to agree or object to the use or disclosure cannot practicably be provided because of the individual's incapacity or an emergency circumstance, the covered entity may, in the exercise of professional judgment, determine whether the disclosure is in the best interests of the individual and, if so, disclose only the protected health information that is directly relevant to the person's involvement with the individual's health care. A covered entity may use professional judgment and its experience with common practice to make reasonable inferences of the individual's best interest in allowing a person to act on behalf of the individual to pick up filled prescriptions, medical supplies, X-rays, or other similar forms of protected health information.

(4) Use and disclosures for disaster relief purposes. A covered entity may use or disclose protected health information to a public or private entity authorized by law or by its charter to assist in disaster relief efforts, for the purpose of coordinating with such entities the uses or disclosures permitted by paragraph (b)(1)(ii) of this section. The requirements in paragraphs (b)(2) and (3) of this section apply to such uses and disclosure to the extent that the covered entity, in the exercise of professional judgment, determines that the requirements do not interfere with the ability to respond to the emergency circumstances.

[67 FR 53270, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.510

45 CFR § 164.510

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.512
45 C.F.R. § 164.512

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 164--SECURITY AND PRIVACY**
**SUBPART E--PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION**
Current through January 22, 2003; 68 FR 3154

**§ 164.512 Uses and disclosures for which an authorization or opportunity to agree or object is not required.**

A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity's information and the individual's agreement may be given orally.

(a) Standard: Uses and disclosures required by law.

(1) A covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

law.

(2) A covered entity must meet the requirements described in paragraph (c), (e), or (f) of this section for uses or disclosures required by law.

(b) Standard: uses and disclosures for public health activities.

(1) Permitted disclosures. A covered entity may disclose protected health information for the public health activities and purposes described in this paragraph to:

(i) A public health authority that is authorized by law to collect or receive such information for the purpose of preventing or controlling disease, injury, or disability, including, but not limited to, the reporting of disease, injury, vital events such as birth or death, and the conduct of public health surveillance, public health investigations, and public health interventions; or, at the direction of a public health authority, to an official of a foreign government agency that is acting in collaboration with a public health authority;

(ii) A public health authority or other appropriate government authority authorized by law to receive reports of child abuse or neglect;

(iii) A person subject to the jurisdiction of the Food and Drug Administration (FDA) with respect to an FDA-regulated product or activity for which that person has responsibility, for the purpose of activities related to the quality, safety or effectiveness of such FDA-regulated product or activity. Such purposes include:

(A) To collect or report adverse events (or similar activities with respect to food or dietary supplements), product defects or problems (including problems with the use or labeling of a product), or biological product deviations;

(B) To track FDA-regulated products;

(C) To enable product recalls, repairs, or replacement, or lookback (including locating and notifying individuals who have received products that have been recalled, withdrawn, or are the subject of lookback); or

(D) To conduct post marketing surveillance;

(iv) A person who may have been exposed to a communicable disease or may otherwise be at risk of contracting or spreading a disease or condition, if the covered entity or public health authority is authorized by law to notify such person as necessary in the conduct of a public health intervention or investigation; or

(v) An employer, about an individual who is a member of the workforce of the employer, if:

(A) The covered entity is a covered health care provider who is a member of the workforce of such employer or who provides health care to the individual at the request of the employer:

(1) To conduct an evaluation relating to medical surveillance of the workplace; or

(2) To evaluate whether the individual has a work-related illness or injury;

(B) The protected health information that is disclosed consists of findings concerning a work-related illness or injury or a workplace-related medical surveillance;

(C) The employer needs such findings in order to comply with its obligations, under 29 CFR parts 1904 through 1928, 30 CFR parts 50 through 90, or under state law having a similar purpose, to record such illness or injury or to carry out responsibilities for workplace medical surveillance; and

(D) The covered health care provider provides written notice to the individual that protected health information relating to the medical surveillance of the workplace and work-related illnesses and injuries is disclosed

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

to the employer:

(1) By giving a copy of the notice to the individual at the time the health care is provided; or

(2) If the health care is provided on the work site of the employer, by posting the notice in a prominent place at the location where the health care is provided.

(2) Permitted uses. If the covered entity also is a public health authority, the covered entity is permitted to use protected health information in all cases in which it is permitted to disclose such information for public health activities under paragraph (b)(1) of this section.

(c) Standard: Disclosures about victims of abuse, neglect or domestic violence.

(1) Permitted disclosures. Except for reports of child abuse or neglect permitted by paragraph (b)(1)(ii) of this section, a covered entity may disclose protected health information about an individual whom the covered entity reasonably believes to be a victim of abuse, neglect, or domestic violence to a government authority, including a social service or protective services agency, authorized by law to receive reports of such abuse, neglect, or domestic violence:

(i) To the extent the disclosure is required by law and the disclosure complies with and is limited to the relevant requirements of such law;

(ii) If the individual agrees to the disclosure; or

(iii) To the extent the disclosure is expressly authorized by statute or regulation and:

(A) The covered entity, in the exercise of professional judgment, believes the disclosure is necessary to prevent serious harm to the individual or other potential victims; or

(B) If the individual is unable to agree because of incapacity, a law enforcement or other public official authorized to receive the report represents that the protected health information for which disclosure is sought is not intended to be used against the individual and that an immediate enforcement activity that depends upon the disclosure would be materially and adversely affected by waiting until the individual is able to agree to the disclosure.

(2) Informing the individual. A covered entity that makes a disclosure permitted by paragraph (c)(1) of this section must promptly inform the individual that such a report has been or will be made, except if:

(i) The covered entity, in the exercise of professional judgment, believes informing the individual would place the individual at risk of serious harm; or

(ii) The covered entity would be informing a personal representative, and the covered entity reasonably believes the personal representative is responsible for the abuse, neglect, or other injury, and that informing such person would not be in the best interests of the individual as determined by the covered entity, in the exercise of professional judgment.

(d) Standard: Uses and disclosures for health oversight activities.

(1) Permitted disclosures. A covered entity may disclose protected health information to a health oversight agency for oversight activities authorized by law, including audits; civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or actions; or other activities necessary for appropriate oversight of:

(i) The health care system;

(ii) Government benefit programs for which

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

health information is relevant to beneficiary eligibility;

(iii) Entities subject to government regulatory programs for which health information is necessary for determining compliance with program standards; or

(iv) Entities subject to civil rights laws for which health information is necessary for determining compliance.

(2) Exception to health oversight activities. For the purpose of the disclosures permitted by paragraph (d)(1) of this section, a health oversight activity does not include an investigation or other activity in which the individual is the subject of the investigation or activity and such investigation or other activity does not arise out of and is not directly related to:

(i) The receipt of health care;

(ii) A claim for public benefits related to health; or

(iii) Qualification for, or receipt of, public benefits or services when a patient's health is integral to the claim for public benefits or services.

(3) Joint activities or investigations. Nothwithstanding paragraph (d)(2) of this section, if a health oversight activity or investigation is conducted in conjunction with an oversight activity or investigation relating to a claim for public benefits not related to health, the joint activity or investigation is considered a health oversight activity for purposes of paragraph (d) of this section.

(4) Permitted uses. If a covered entity also is a health oversight agency, the covered entity may use protected health information for health oversight activities as permitted by paragraph (d) of this section.

(e) Standard: Disclosures for judicial and administrative proceedings.

(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

(iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protecting health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

(B) The notice included sufficient information about the litigation or proceeding in which the protected health information is

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

(1) No objections were filed; or

(2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or

(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

(vi) Nothwithstanding paragraph (e)(1)(ii) of this section, a covered entity may disclose protected health information in response to lawful process described in paragraph (e)(1)(ii) of this section without receiving satisfactory assurance under paragraph (e)(1)(ii)(A) or (B) of this section, if the covered entity makes reasonable efforts to provide notice to the individual sufficient to meet the requirements of paragraph (e)(1)(iii) of this section or to seek a qualified protective order sufficient to meet the requirements of paragraph (e)(1)(iv) of this section.

(2) Other uses and disclosures under this section. The provisions of this paragraph do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures of protected health information.

(f) Standard: Disclosures for law enforcement purposes. A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if the conditions in paragraphs (f)(1) through (f)(6) of this section are met, as applicable.

(1) Permitted disclosures: Pursuant to process and as otherwise required by law. A covered entity may disclose protected health information:

(i) As required by law including laws that require the reporting of certain types of wounds or other physical injuries, except for laws subject to paragraph (b)(1)(ii) or (c)(1)(i) of this section; or

(ii) In compliance with and as limited by the relevant requirements of:

(A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

(B) A grand jury subpoena; or

(C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:

(1) The information sought is relevant and material to a legitimate law enforcement inquiry;

(2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and

(3) De-identified information could not reasonably be used.

(2) Permitted disclosures: Limited information for identification and location purposes. Except for disclosures required by law as permitted by paragraph (f)(1) of this section, a covered entity may disclose protected health information in response to a law enforcement official's request for such information for the purpose of identifying or locating a suspect, fugitive, material witness, or missing person, provided that:

(i) The covered entity may disclose only the following information:

(A) Name and address;

(B) Date and place of birth;

(C) Social security number;

(D) ABO blood type and rh factor;

(E) Type of injury;

(F) Date and time of treatment;

(G) Date and time of death, if applicable; and

(H) A description of distinguishing physical characteristics, including height, weight, gender, race, hair and eye color, presence or absence of facial hair (beard or moustache), scars, and tattoos.

(ii) Except as permitted by paragraph (f)(2)(i) of this section, the covered entity may not disclose for the purposes of identification or location under paragraph (f)(2) of this section any protected health information related to the individual's DNA or DNA analysis, dental records, or typing, samples or analysis of body fluids or tissue.

(3) Permitted disclosure: Victims of a crime. Except for disclosures required by law as permitted by paragraph (f)(1) of this section, a covered entity may disclose protected health information in response to a law enforcement official's request for such information about an individual who is or is suspected to be a victim of a crime, other than disclosures that are subject to paragraph (b) or (c) of this section, if:

(i) The individual agrees to the disclosure; or

(ii) The covered entity is unable to obtain the individual's agreement because of incapacity or other emergency circumstance, provided that:

(A) The law enforcement official represents that such information is needed to determine whether a violation of law by a person other than the victim has occurred, and such information is not intended to be used against the victim;

(B) The law enforcement official represents that immediate law enforcement activity that depends upon the disclosure would be materially and adversely affected by waiting until the individual is able to agree to the disclosure; and

(C) The disclosure is in the best interests of the individual as determined by the covered entity, in the exercise of professional judgment.

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

(4) Permitted disclosure: Decedents. A covered entity may disclose protected health information about an individual who has died to a law enforcement official for the purpose of alerting law enforcement of the death of the individual if the covered entity has a suspicion that such death may have resulted from criminal conduct.

(5) Permitted disclosure: Crime on premises. A covered entity may disclose to a law enforcement official protected health information that the covered entity believes in good faith constitutes evidence of criminal conduct that occurred on the premises of the covered entity.

(6) Permitted disclosure: Reporting crime in emergencies.

(i) A covered health care provider providing emergency health care in response to a medical emergency, other than such emergency on the premises of the covered health care provider, may disclose protected health information to a law enforcement official if such disclosure appears necessary to alert law enforcement to:

(A) The commission and nature of a crime;

(B) The location of such crime or of the victim(s) of such crime; and

(C) The identity, description, and location of the perpetrator of such crime.

(ii) If a covered health care provider believes that the medical emergency described in paragraph (f)(6)(i) of this section is the result of abuse, neglect, or domestic violence of the individual in need of emergency health care, paragraph (f)(6)(i) of this section does not apply and any disclosure to a law enforcement official for law enforcement purposes is subject to paragraph (c) of this section.

(g) Standard: Uses and disclosures about decedents.

(1) Coroners and medical examiners. A covered entity may disclose protected health information to a coroner or medical examiner for the purpose of identifying a deceased person, determining a cause of death, or other duties as authorized by law. A covered entity that also performs the duties of a coroner or medical examiner may use protected health information for the purposes described in this paragraph.

(2) Funeral directors. A covered entity may disclose protected health information to funeral directors, consistent with applicable law, as necessary to carry out their duties with respect to the decedent. If necessary for funeral directors to carry out their duties, the covered entity may disclose the protected health information prior to, and in reasonable anticipation of, the individual's death.

(h) Standard: Uses and disclosures for cadaveric organ, eye or tissue donation purposes. A covered entity may use or disclose protected health information to organ procurement organizations or other entities engaged in the procurement, banking, or transplantation of cadaveric organs, eyes, or tissue for the purpose of facilitating organ, eye or tissue donation and transplantation.

(i) Standard: Uses and disclosures for research purposes.

(1) Permitted uses and disclosures. A covered entity may use or disclose protected health information for research, regardless of the source of funding of the research, provided that:

(i) Board approval of a waiver of authorization. The covered entity obtains documentation that an alteration to or waiver, in whole or in part, of the individual authorization required by § 164.508 for use or disclosure of protected health information has been approved by either:

(A) An Institutional Review Board (IRB), established in accordance with 7 CFR lc.107,

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

10 CFR 745.107, 14 CFR 1230.107, 15 CFR 27.107, 16 CFR 1028.107, 21 CFR 56.107, 22 CFR 225.107, 24 CFR 60.107, 28 CFR 46.107, 32 CFR 219.107, 34 CFR 97.107, 38 CFR 16.107, 40 CFR 26.107, 45 CFR 46.107, 45 CFR 690.107, or 49 CFR 11.107; or

(B) A privacy board that:

(1) Has members with varying backgrounds and appropriate professional competency as necessary to review the effect of the research protocol on the individual's privacy rights and related interests;

(2) Includes at least one member who is not affiliated with the covered entity, not affiliated with any entity conducting or sponsoring the research, and not related to any person who is affiliated with any of such entities; and

(3) Does not have any member participating in a review of any project in which the member has a conflict of interest.

(ii) Reviews preparatory to research. The covered entity obtains from the researcher representations that:

(A) Use or disclosure is sought solely to review protected health information as necessary to prepare a research protocol or for similar purposes preparatory to research;

(B) No protected health information is to be removed from the covered entity by the researcher in the course of the review; and

(C) The protected health information for which use or access is sought is necessary for the research purposes.

(iii) Research on decedent's information. The covered entity obtains from the researcher:

(A) Representation that the use or disclosure sought is solely for research on the protected health information of decedents;

(B) Documentation, at the request of the covered entity, of the death of such individuals; and

(C) Representation that the protected health information for which use or disclosure is sought is necessary for the research purposes.

(2) Documentation of waiver approval. For a use or disclosure to be permitted based on documentation of approval of an alteration or waiver, under paragraph (i)(1)(i) of this section, the documentation must include all of the following:

(i) Identification and date of action. A statement identifying the IRB or privacy board and the date on which the alteration or waiver of authorization was approved;

(ii) Waiver criteria. A statement that the IRB or privacy board has determined that the alteration or waiver, in whole or in part, of authorization satisfies the following criteria:

(A) The use or disclosure of protected health information involves no more than a minimal risk to the privacy of individuals, based on, at least, the presence of the following elements;

(1) An adequate plan to protect the identifiers from improper use and disclosure;

(2) An adequate plan to destroy the identifiers at the earliest opportunity consistent with conduct of the research, unless there is a health or research justification for retaining the identifiers or such retention is otherwise required by law; and

(3) Adequate written assurances that the protected health information will not be reused or disclosed to any other person or entity, except as required by law, for authorized oversight of the research study, or for other research for which the use or disclosure of protected health information would be permitted by this subpart;

(B) The research could not practicably be

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

conducted without the waiver or alteration; and

(C) The research could not practicably be conducted without access to and use of the protected health information.

(iii) Protected health information needed. A brief description of the protected health information for which use or access has been determined to be necessary by the IRB or privacy board has determined, pursuant to paragraph (i)(2)(ii)(C) of this section;

(iv) Review and approval procedures. A statement that the alteration or waiver of authorization has been reviewed and approved under either normal or expedited review procedures, as follows:

(A) An IRB must follow the requirements of the Common Rule, including the normal review procedures (7 CFR 1c.108(b), 10 CFR 745.108(b), 14 CFR 1230.108(b), 15 CFR 27.108(b), 16 CFR 1028.108(b), 21 CFR 56.108(b), 22 CFR 225.108(b), 24 CFR 60.108(b), 28 CFR 46.108(b), 32 CFR 219.108(b), 34 CFR 97.108(b), 38 CFR 16.108(b), 40 CFR 26.108(b), 45 CFR 46.108(b), 45 CFR 690.108(b), or 49 CFR 11.108(b)) or the expedited review procedures (7 CFR 1c.110, 10 CFR 745.110, 14 CFR 1230.110, 15 CFR 27.110, 16 CFR 1028.110, 21 CFR 56.110, 22 CFR 225.110, 24 CFR 60.110, 28 CFR 46.110, 32 CFR 219.110, 34 CFR 97.110, 38 CFR 16.110, 40 CFR 26.110, 45 CFR 46.110, 45 CFR 690.110, or 49 CFR 11.110);

(B) A privacy board must review the proposed research at convened meetings at which a majority of the privacy board members are present, including at least one member who satisfies the criterion stated in paragraph (i)(1)(i)(B)(2) of this section, and the alteration or waiver of authorization must be approved by the majority of the privacy board members present at the meeting, unless the privacy board elects to use an expedited review procedure in accordance with paragraph (i)(2)(iv)(C) of this section;

(C) A privacy board may use an expedited review procedure if the research involves no more than minimal risk to the privacy of the individuals who are the subject of the protected health information for which use or disclosure is being sought. If the privacy board elects to use an expedited review procedure, the review and approval of the alteration or waiver of authorization may be carried out by the chair of the privacy board, or by one or more members of the privacy board as designated by the chair; and

(v) Required signature. The documentation of the alteration or waiver of authorization must be signed by the chair or other member, as designated by the chair, of the IRB or the privacy board, as applicable.

(j) Standard: Uses and disclosures to avert a serious threat to health or safety.

(1) Permitted disclosures. A covered entity may, consistent with applicable law and standards of ethical conduct, use or disclose protected health information, if the covered entity, in good faith, believes the use or disclosure:

(i)(A) Is necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or the public; and

(B) Is to a person or persons reasonably able to prevent or lessen the threat, including the target of the threat; or

(ii) Is necessary for law enforcement authorities to identify or apprehend an individual:

(A) Because of a statement by an individual admitting participation in a violent crime that the covered entity reasonably believes may have caused serious physical harm to the victim; or

(B) Where it appears from all the

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

circumstances that the individual has escaped from a correctional institution or from lawful custody, as those terms are defined in § 164.501.

(2) Use or disclosure not permitted. A use or disclosure pursuant to paragraph (j)(1)(ii)(A) of this section may not be made if the information described in paragraph (j)(1)(ii)(A) of this section is learned by the covered entity:

(i) In the course of treatment to affect the propensity to commit the criminal conduct that is the basis for the disclosure under paragraph (j)(1)(ii)(A) of this section, or counseling or therapy; or

(ii) Through a request by the individual to initiate or to be referred for the treatment, counseling, or therapy described in paragraph (j)(2)(i) of this section.

(3) Limit on information that may be disclosed. A disclosure made pursuant to paragraph (j)(1)(ii)(A) of this section shall contain only the statement described in paragraph (j)(1)(ii)(A) of this section and the protected health information described in paragraph (f)(2)(i) of this section.

(4) Presumption of good faith belief. A covered entity that uses or discloses protected health information pursuant to paragraph (j)(1) of this section is presumed to have acted in good faith with regard to a belief described in paragraph (j)(1)(i) or (ii) of this section, if the belief is based upon the covered entity's actual knowledge or in reliance on a credible representation by a person with apparent knowledge or authority.

(k) Standard: Uses and disclosures for specialized government functions.

(1) Military and veterans activities.

(i) Armed Forces personnel. A covered entity may use and disclose the protected health information of individuals who are Armed Forces personnel for activities deemed necessary by appropriate military command authorities to assure the proper execution of the military mission, if the appropriate military authority has published by notice in the Federal Register the following information:

(A) Appropriate military command authorities; and

(B) The purposes for which the protected health information may be used or disclosed.

(ii) Separation or discharge from military service. A covered entity that is a component of the Departments of Defense or Transportation may disclose to the Department of Veterans Affairs (DVA) the protected health information of an individual who is a member of the Armed Forces upon the separation or discharge of the individual from military service for the purpose of a determination by DVA of the individual's eligibility for or entitlement to benefits under laws administered by the Secretary of Veterans Affairs.

(iii) Veterans. A covered entity that is a component of the Department of Veterans Affairs may use and disclose protected health information to components of the Department that determine eligibility for or entitlement to, or that provide, benefits under the laws administered by the Secretary of Veterans Affairs.

(iv) Foreign military personnel. A covered entity may use and disclose the protected health information of individuals who are foreign military personnel to their appropriate foreign military authority for the same purposes for which uses and disclosures are permitted for Armed Forces personnel under the notice published in the Federal Register pursuant to paragraph (k)(1)(i) of this section.

(2) National security and intelligence activities. A covered entity may disclose protected health information to authorized

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

federal officials for the conduct of lawful intelligence, counter-intelligence, and other national security activities authorized by the National Security Act (50 U.S.C. 401, et seq.) and implementing authority (e.g., Executive Order 12333).

(3) Protective services for the President and others. A covered entity may disclose protected health information to authorized federal officials for the provision of protective services to the President or other persons authorized by 18 U.S.C. 3056, or to foreign heads of state or other persons authorized by 22 U.S.C. 2709(a)(3), or to for the conduct of investigations authorized by 18 U.S.C. 871 and 879.

(4) Medical suitability determinations. A covered entity that is a component of the Department of State may use protected health information to make medical suitability determinations and may disclose whether or not the individual was determined to be medically suitable to the officials in the Department of State who need access to such information for the following purposes:

(i) For the purpose of a required security clearance conducted pursuant to Executive Orders 10450 and 12698;

(ii) As necessary to determine worldwide availability or availability for mandatory service abroad under sections 101(a)(4) and 504 of the Foreign Service Act; or

(iii) For a family to accompany a Foreign Service member abroad, consistent with section 101(b)(5) and 904 of the Foreign Service Act.

(5) Correctional institutions and other law enforcement custodial situations.

(i) Permitted disclosures. A covered entity may disclose to a correctional institution or a law enforcement official having lawful custody of an inmate or other individual protected health information about such inmate or individual, if the correctional institution or such law enforcement official represents that such protected health information is necessary for:

(A) The provision of health care to such individuals;

(B) The health and safety of such individual or other inmates;

(C) The health and safety of the officers or employees of or others at the correctional institution;

(D) The health and safety of such individuals and officers or other persons responsible for the transporting of inmates or their transfer from one institution, facility, or setting to another;

(E) Law enforcement on the premises of the correctional institution; and

(F) The administration and maintenance of the safety, security, and good order of the correctional institution.

(ii) Permitted uses. A covered entity that is a correctional institution may use protected health information of individuals who are inmates for any purpose for which such protected health information may be disclosed.

(iii) No application after release. For the purposes of this provision, an individual is no longer an inmate when released on parole, probation, supervised release, or otherwise is no longer in lawful custody.

(6) Covered entities that are government programs providing public benefits.

(i) A health plan that is a government program providing public benefits may disclose protected health information relating to eligibility for or enrollment in the health plan to another agency administering a government program providing public

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.

benefits if the sharing of eligibility or enrollment information among such government agencies or the maintenance of such information in a single or combined data system accessible to all such government agencies is required or expressly authorized by statute or regulation.

(ii) A covered entity that is a government agency administering a government program providing public benefits may disclose protected health information relating to the program to another covered entity that is a government agency administering a government program providing public benefits if the programs serve the same or similar populations and the disclosure of protected health information is necessary to coordinate the covered functions of such programs or to improve administration and management relating to the covered functions of such programs.

(l) Standard: Disclosures for workers' compensation. A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault.

[67 FR 53270, Aug. 14, 2002]

<General Materials (GM) - References, Annotations, or Tables>

45 C. F. R. § 164.512

45 CFR § 164.512

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

45 CFR S 164.514
45 C.F.R. § 164.514

**CODE OF FEDERAL REGULATIONS**
**TITLE 45--PUBLIC WELFARE**
**SUBTITLE A--DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**SUBCHAPTER C--ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS**
**PART 164--SECURITY AND PRIVACY**
**SUBPART E--PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION**
Current through January 22, 2003; 68 FR 3154

**§ 164.514 Other requirements relating to uses and disclosures of protected health information.**

(a) Standard: de-identification of protected health information. Health information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual is not individually identifiable health information.

(b) Implementation specifications: requirements for de-identification of protected health information. A covered entity may determine that health information is not individually identifiable health information only if:

(1) A person with appropriate knowledge of and experience with generally accepted statistical and scientific principles and methods for rendering information not individually identifiable:

(i) Applying such principles and methods, determines that the risk is very small that the information could be used, alone or in combination with other reasonably available information, by an anticipated recipient to identify an individual who is a subject of the

These regulations were printed from Westlaw, and the Department of Justice was given authorization by Westlaw to reproduce these materials.