**UNITED STATES OF AMERICA**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| vs | : | **Cr. No. 05-102ML** |
| | : | |
| **JOHN CURRAN** | : | |

**REQUEST FOR TEMPORARY EXEMPTION FROM ELECTRONIC FILING PURSUANT TO LOCAL ADMINSTRATIVE PROCEDURE 2(c)**

Now comes the attorney for the defendant in the above-entitled matter and hereby requests relief pursuant to Local Administrative Procedures for Electronic Filing Rule 2(c). Defense attorney requests an exemption from the electronic filing requirement for the following reasons:

a) Though counsel has taken the required ECF training and was recently given a filing password, he has not filed anything electronically;
b) The instant sentencing memorandum and exhibits is voluminous, requiring the use of a scanner, which counsel has not yet purchased for his office;
c) Counsel was under the impression that the 20 day Order allowing him additional time to file electronically which is valid until August 23rd would cover the filing of this Memorandum;
d) Counsel will immediately purchase a scanner for the office and obtain a PACER password, for future filings;
e) Time is of the essence to the filing of this document.

WHEREFORE, in light of the foregoing, counsel respectfully and very earnestly prays that he be granted an exemption from the Local Rule for this one occasion based upon the above reasons.

**John Curran,**
**By his attorney,**

**Scott A. Lutes, R.I. Bar #3502**
**127 Dorrance Street**
**Providence, RI 02903**
**Telephone: (401) 861-1142**
**Facsimile: (401) 490-3207**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO.: CR 05-102ML |
| | : | |
| JOHNCURRAN | : | |

**MOTION FOR DOWNWARD DEPARTURE FROM SUGGESTED GUIDELINE SENTENCING RANGE**

Now comes the Attorney for John Curran in the above-entitled matter and hereby moves this Honorable Court to downwardly depart from the suggested Guideline Sentencing Range. In support of this Motion, counsel argues that the suggested guideline range is too harsh as applied to the facts of the instant case and fails to do individual justice to this defendant. Moreover, an analysis under the relevant sentencing factors of 18 U.S.C. §3553 (a) militates in favor of a more lenient sentence.

In further support of this Motion, counsel relies upon the reasoning as set forth in the attached Memorandum of Law.

Wherefore, in light of the foregoing, counsel respectfully prays that his Motion for Downward Departure be granted.

Respectfully submitted,
JOHN CURRAN,
By his Attorney,

Scott A. Lutes (#3502)
127 Dorrance Street - 2nd Floor
Providence, Rhode Island 02903
Telephone: (401) 861-1142
Facsimile: (401) 490-3207

**CERTIFICATION**

I, the undersigned, do hereby certify that I ~~mailed~~ hand-delivered a true and accurate copy of the within by regular postage pre-paid mail to Luis Matos, Assistant United States Attorney, U.S. Attorney's Office, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, Rhode Island 02903 on the 21st day of August, 2006.

________________________

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **NO.: CR 05-102ML** |
| | : | |
| **JOHNCURRAN** | : | |

**SENTENCING MEMORANDUM IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE FROM SUGGESTED GUIDELINE SENTENCING RANGE**

**Introduction:**

The Defendant, John Curran hereby files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence "is sufficient, but not greater than necessary", to comply with the statutory directives set forth in 18 U.S.C. § 3553 (a).

The United States Department of Probation calculated a Guideline Sentencing Range in this case of 262-327 months of incarceration. The maximum statutory term of imprisonment for each count of conviction is 20 years (or 240 months).

The Defense interposed a timely Objection to Probation's calculation based upon the fact that the Sentencing Range was determined exclusively upon the Prosecution's Version of Facts. The Prosecution's Version of Facts includes accusations and information that was never proven to a jury nor admitted by the Defendant. These accusations and information *significantly skew upward*, the Guideline Sentencing Range in this case, yet clearly violate the Sixth Amendment and are directly contrary to the holdings of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005).

The Defense contends that as a starting point, the Court should *properly* calculate the Guideline Sentencing Range. This should significantly reduce the Guideline Sentencing Range. Secondly, once the Court has determined the appropriate Guideline Sentencing Range, the Court should analyze the elements of 18 U.S.C. §3553(a), to ensure that the sentence is "sufficient, but not greater than necessary" to effectuate the goals of criminal punishment. *United States v. Jimenez-Beltre*, 440 F.3d 514, 521 (1st Cir. 2006).

As is more fully developed below, the Defendant contends, based upon the facts proven at trial, that the appropriate Guideline Sentencing Range is a Level 15, Criminal History Category I, resulting in a sentence of 18-24 months. After analyzing the factors set forth in 18 U.S.C. § 3553 (a), the Defendant argues that justice would be served by imposition of a below Guideline Sentence.

## ANALYSIS

### Sentencing Since *Booker*

On January 12, 2005, the United States Supreme Court decided the landmark case of *United States v. Booker, 543 U.S. 220*. *Booker*, applied the Court's Sixth Amendment holding of *Blakely v. Washington, 542 U.S. 296,* to the United States Sentencing Guidelines. The Court determined that "the Sixth Amendment is violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by a jury or admitted by the defendant." *Ibid.*

The facts of Booker are instructive. The sentence authorized by the jury verdict in defendant Booker's case resulted in a Guideline sentence of 210-262 months. At sentencing, the trial judge imposed a sentence of 30 years based upon facts found by a preponderance of evidence at sentencing, instead of the facts proven to a jury beyond a reasonable doubt. The Seventh Circuit reversed the sentence because the enhancements conflicted with *Apprendi v. New Jersey, 520 U.S. 466,490,* which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Relying on *Blakely v. Washington, 542 U.S. 296,* the Seventh Circuit held that the sentence violated the Sixth Amendment and instructed the District Court either to sentence Booker within the sentencing range **supported by the jury's findings** (*emphasis added*) or to hold a separate sentencing hearing before a jury.

The Supreme Court upheld the Seventh Circuit's decision and determined that the Sixth Amendment as construed in *Blakely* applied to the Sentencing Guidelines. Based upon this conclusion, the Court found those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, i.e., 18 U.S.C. §3553(b)(1) or which rely upon the Guidelines mandatory nature, 18 U.S.C. §3742(e) are incompatible with its Sixth Amendment holding. Accordingly, the Court severed and excised those provisions, making the Guidelines "effectively advisory". *United States v. Smith, 445 F.3d 1, 3(2006).* The case was then remanded for re-sentencing.

Thus, since *Booker*, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553 (a).

The primary directive in Section 18 U.S.C. §3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." The purposes set forth in 18 U.S.C. §3553 (a) (2) are:

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to criminal conduct;

(c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 18 U.S.C. §3553(a) further directs sentencing courts to consider the following factors:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The kinds of sentences available;

3) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

4) The need to provide restitution to any victims of the offense.

Other statutory sections give a sentencing court direction. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the section 3553(a) factors, the judge is required to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation".

Under 18 U.S.C. §3661, no limitation shall be placed on the information concerning the background, character, and conduct of the defendant which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. This language certainly overrides the (*now advisory*) policy statements in Part H of the Sentencing Guidelines which list as "not ordinarily relevant" a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional condition, drug or alcohol dependence, and lack of guidance as a youth. "That a factor is discouraged or forbidden under the Guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the Guidelines. The Guidelines –being advisory- are no longer decisive as to factors any more than as to results." *U.S. v. Smith, 445F.3d at 5.*

**Application of the Facts of this case to 18 U.S.C. §3553:**

In the present case, the following factors must be considered when determining what type and length of sentence is "sufficient but not greater than necessary, to satisfy the purposes of sentencing":

**To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense**

This offense was not a crime of violence. There was no weapon involved and people were not coerced to engage in this form of "alternative medicine". It is essentially a property crime that is aggravated by virtue of the fact that the defendant stood in a special position of trust as a naturopathic doctor.[1]

[1] The defense did not interpose an objection to that portion of the Pre-Sentence Report applying an enhancement for abuse of a position of trust pursuant to 3B1.3.

While a couple of former clients complained of certain ailments such as overheating, faintness, hunger pains and in the case of Susan Barden "a sunburn like" burn, there were no serious side effects from any of the treatments recommended by John Curran. The Pre-Sentence Report however, included an enhancement based upon a determination that "Serious Bodily Injury" had been inflicted. Serious Bodily Injury is defined in the Guidelines as "injury involving extreme physical pain or the protracted impairment of a bodily member, organ, or mental faculty, requiring medical intervention such as surgery, hospitalization, or physical rehabilitation". This simply did not happen in this case and the enhancement should not have been applied.

Facing incarceration, John Curran now understands the seriousness of the offense for which he has been convicted and will be reminded of it daily as he works to repay the victims in this case. Prior to this, his first offense, John Curran has always exhibited respect for the law. He has no prior record and desired to go into law enforcement as a career until family circumstances pushed him into alternative medicine. An excessively long sentence is not required in this case to instill respect for the law.

All of these factors speak to a lower sentence.

**To afford adequate deterrence to criminal conduct**

This is a highly unusual case. To counsel's knowledge, this is the first time a naturopathic doctor has been federally prosecuted for wire fraud and money laundering. Typically, the facts of this case would have resulted in a state prosecution for unauthorized practice of medicine which would result in little or no jail. A cursory review of recently reported instances of practicing medicine without a license, some of which involved actual injury to patients resulted in short jail sentences.

This case does not represent one of society's common problems such as drug dealing or bank robbery where there is a need to impose a stiff sentence to send a general societal message of deterrence. This case is simply one of individual deterrence.

**<u>To protect the public from further crimes of the defendant</u>**

Due to its unusual nature and the publicity attendant to the case, it is unlikely that this factor is applicable. John Curran will never be allowed to practice naturopathy again. He has already been prohibited from doing so by the State of Rhode Island and there have been no transgressions of this Order. Moreover, whatever period of supervised release is imposed by the Court, an Order prohibiting future practice can easily be added and would not be opposed by the defense.

This is a case of individual deterrence. Any punishment the defendant receives is draconian in light of the time it would represent away from family and loved ones.

Moreover, the defendant's age and prior respect for the law militates against his being a recidivist. Statistically, the older a defendant is, the less likely he is to re-offend.

**<u>To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>**

Again, this defendant is atypical and this element does not apply to him. John Curran has the necessary education to provide for himself upon release and to work toward paying off the restitution figure to be imposed by the Court. John Curran has always been gainfully employed and provided for himself and his family. He is in excellent physical health and suffers from no drug or substance abuse addictions. Consequently, there is no need to impose a lengthy prison sentence in order to help

rehabilitate the defendant. In fact, the sooner John Curran can be released from incarceration, the sooner he will be able to compensate his victims.

This element is in the Defendant's favor and militates to a lesser sentence.

In order to determine the minimally sufficient sentence, the Court should further consider the following factors pursuant to 18 U.S.C. §3553(a):

**The nature and circumstances of the offense and the history and characteristics of the offender;**

In this case John Curran practiced Naturopathy, an unlicensed health care practice. In Rhode Island there are no educational requirements to practice this field of alternative health care. Being *unlicensed*, there is no supervision of practitioners. The only regulatory provision is that practitioners must disclose their educational background, if any, to prospective clients and provide clients with a Bill of Rights.

One of the mitigating factors that must be taken into consideration in this case is the fact that Curran always disclosed in writing, that he could not diagnose or treat disease. In addition, Curran's practice was to provide clients with a written disclaimer fully stating that he was not a practicing M.D. and that his degree in medicine was "honorary" or "academic only". While this did not relieve him of guilt with those clients who stated he *orally* made promises and inducements contrary to his written words, it should be taken into consideration that clients should have been aware of his limitations in this field of *alternative, unlicensed* health care. Moreover, many clients went to Curran for an extended period of time and achieved outstanding results, some of which are mentioned in the letters of support appended as Exhibit "A".

The defense contends that the defendant was a legitimate, trained naturopath, who misled some clients as to his abilities and the nature of the additional academic degrees he acquired with little or no work. But this is not a case where the Defendant perpetrated a fraud upon the public by simply printing up his own degrees and holding himself out as a doctor. In this case, John Curran spent a lot of money legitimately obtaining his naturopathic degrees and then took short cuts to obtain his advanced degrees over the internet with a minimum of studying, usually consisting of proficiency testing. In hindsight, what seems too good to be true, is accurate. Certainly a mitigating factor has to be that the Defendant really did continue to educate himself by taking continuing medical education courses over the internet. He compounded his mistakes by framing these certificates, because some clients were apparently misled into believing that they were degrees from the institutions instead of simply certificates of completion of on-line courses. Even though some clients were misled, the reality is the Defendant did take courses and complete the tests. He acquired knowledge that he felt would be helpful in his practice, but he took it too far.

To sum up John Curran's history and characteristics, one would describe him as a 41 year old devoted family man who has always been gainfully employed and demonstrated respect for the law.

As is detailed in the Pre-Sentence Report as well as the reports of the Federal Prison Consultants attached hereto as Exhibit "B", John Curran is a devoted son, father and friend, who enjoys close associations and support from his friends and family. Defendant didn't go into the field of health care to make money. His motivation for going into holistic, alternative health care was based upon his first hand experience with

the death and disease of loved ones and the failure of conventional medicine to treat it. Defendant's first wife died of cancer as did his favorite grandfather. His best friend, Kevin Larkin, contracted cancer, but survived. Mr. Larkin testified at trial and attributes his good health and ability to walk to the nutritional protocols recommended by John Curran.

The defendant has been married at common law for the past 6 years to Colleen Brophy. They have a beautiful 3 year old son, Gabriel. John Curran enjoys an incredibly close relationship with his son. During the past year that he has been on home confinement status, defendant has been the primary caretaker of Gabriel. Literally, 24 hours a day, John Curran has been with his son. The effects of defendant's departure from Gabriel's life upon his incarceration will be incredibly difficult and painful for father and son. In defense counsel's nearly 20 years of practice, this is the first time in his experience where the father-son bond has been so close.

John Curran has always been gainfully employed, first as a carpet cleaner and auxiliary police officer with the Warwick Police Department for seven years. Later he opened his own nutrition store on Reservoir Avenue in Cranston. After attaining his N.D. degree, he went into the practice of naturopathy full-time and hence began his legal troubles.

Defendant is a 41 year old first time offender. Typically, criminal defendants of this age have been previously involved in the criminal justice system. Also, statistics demonstrate that the chances of a defendant being a recidivist decline with age. He has a basic set of values instilled within him as a result of his background which is positive and will serve him well once he is released from incarceration.

In short, John Curran is distinguished from virtually all criminal defendants who come before the court for sentencing in that he has never been in legal trouble before now, he has deep, strongly rooted family ties, has always been gainfully employed and still enjoys the support of many of his alleged "victims".

These factors militate in favor of a below Guideline sentence.

**The kinds of sentences available**

The Defendant is eligible for probation by statute, but prohibited from receiving it by virtue of the Guidelines. He has been on home confinement with electronic monitoring as a condition of release, both pre-trial as well as post-verdict, without incident. This defendant would be an ideal candidate for a split sentence with some term to serve, followed by a period of community confinement. This sentence would accomplish the dual purposes of punishment with rehabilitation. Furthermore, by admitting the Defendant to community confinement it would afford him an opportunity to become gainfully employed sooner and consequently begin to pay his restitution sooner thereby benefiting the victims of this case. Additionally, a short sentence followed by a community confinement sentence would allow the Defendant to become re-bonded with his infant son sooner.

These factors weigh in the Defendant's favor.

**The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct;**

To counsel's knowledge, this is the first time a naturopathic doctor has been charged federally with wire fraud and money laundering. Counsel has searched the internet for similar types of cases to no avail. Usually, these cases result in State court

prosecution for practicing medicine without a license. After a conviction, the typical sentence seems to involve a short jail stint, usually a year or less, followed by a probationary period.

The only recent Rhode Island Federal Court case of which counsel is aware, that is even remotely similar was the case of Wallace E. Gonsalves, Jr., who was convicted in September, 2004 before Mr. Justice Lagueux, of drug alteration and tampering, 18 U.S.C. §1365 (a) (2000) and 21 U.S.C. §§331(k), 333(a)(2)(2000), making false statements to the government 18 U.S.C. §1001(2000) and various tax violations 26 U.S.C. §§7201,7206(1)(2000). That case was much more egregious and involved the dilution and improper storage of vaccines, providing false certifications to the INS that hundreds of patients had been tested for HIV and syphilis, falsely reporting that hundreds of patients had been properly immunized, and failure to report over $400,000.00 in income from collecting payments from patients for services covered by insurance. *United States v. Gonsalves, 435 F.3d 64 (1st Cir. 2006).* That case resulted in a ten year prison sentence and a $465,000.00 fine. The sentence calculated by the Department of Probation in this case is more than two and a half times greater than the Gonsalves case.

That is sentencing disparity. That is exactly the evil the Guidelines were designed to avoid. This is one of those cases where a below Guideline sentence is necessary in order to do individual justice.

**The need to provide restitution to any victims of the offense;**

As this case involved wire fraud and money laundering, victim restitution is an important part of the case for most of the victims. For most of the victims, that's all they want. Presumably the assets forfeited to the Government as part of Defendant's

conviction will be applied to helping pay restitution, but it will not be nearly adequate. Simply incarcerating Dr. Curran for an extended period of time will actually prevent many of the victims from receiving compensation. At this time, Dr. Curran has no resources to utilize for any restitution payments and will therefore need to work in order to earn money for restitution payments. A lengthy prison sentence will merely cut down on the number of years he will physically be able to work and will lengthen the waiting period for victims to receive their compensation.

Balancing the need for effective punishment and the need to supply restitution to victims, militates in favor of a below Guideline sentence.

**Factors in support of a downward departure or a below Guideline sentence:**

Without being redundant, this defendant will be punished most by being away from his wife and young son. His son will suffer more than most dependents of the incarcerated. Because of Gabriel's age, 3, and the fact that John Curran has been his primary care taker for most of his life, Gabriel will suffer greatly. Even when Curran was in practice, Gabriel was provided for in the office. During the pendency of this case and now the sentencing, Colleen, Gabriel's mother, has been working double shifts to make ends meet. Once the Defendant is incarcerated, Colleen will still need to work to provide for the family, and Gabriel will be raised by third parties. This is particularly so in the event Curran is designated far out of state, because it is the family's desire to remain as close as possible, even if the family is forced to re-locate out of state away from family and friends.

Additionally, the Defendant is the primary care-taker of his elderly mother. Indeed, even the restrictions of home confinement were amended to accommodate the Defendant's mother's medical needs.

The Defendant is a first time, non-violent offender. He is 41 years old. He is positive minded and spiritual. Statistically, these things indicate that he will not re-offend.

Defendant's strong family ties and the support of his friends and former clients is remarkable and speaks well of him from the people who have known him the best and the longest. These same people have indicated they will continue to support him upon his release.

## CONCLUSION

Based upon all of the foregoing, the Defense requests that the Court adopt its analysis of the proper application of the Sentencing Guidelines. Beginning with a Guideline Sentencing Range of 18-24 months, the Defense asks the Court to depart downward from that range based upon application of the factors set forth in 18 U.S.C. §3553(a) and to impose a sentence of no more than 1 year of incarceration to be followed by 1 year of community confinement with 3 years of supervised release. In light of the Defendant's lack of financial resources, family circumstances and the pendency of a restitution figure to be determined for the benefit of the victims of this crime, the Defense asks that no fine be imposed.

Finally, due to the unusually strong ties this Defendant enjoys with his family, the fact that he has been on home confinement with electronic monitoring for almost a year without a single infraction, his lack of resources, the fact that an additional 45 days is

required in order to arrive at an appropriate restitution figure for which the Defendant's assistance is essential, and the fact that it is taking longer than usual for the Bureau of Prisons to designate inmates due to the difficulties associated with its recent centralization, the defense asks for permission to allow the Defendant to voluntarily surrender at the designated facility once it has been determined.

Respectfully submitted,
JOHN CURRAN,
By his Attorney,

Scott A. Lutes (#3502)
127 Dorrance Street - 2nd Floor
Providence, Rhode Island 02903
Telephone: (401) 861-1142
Facsimile: (401) 490-3207

**CERTIFICATION**

I, the undersigned, do hereby certify that I hand-delivered a true and accurate copy of the within to Luis Matos, Assistant United States Attorney, U.S. Attorney's Office, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, Rhode Island 02903 on the 21st day of August, 2006.

[signature]