# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA   :

                       :

    vs.                   :            CR No. 05-102-ML

                       :

JOHN CURRAN            :

## MEMORANDUM AND ORDER

John Curran has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. He has also filed a motion to amend his motion to vacate, and an accompanying request for an evidentiary hearing. For the reasons that follow, all of these motions are DENIED.

## FACTUAL BACKGROUND AND TRAVEL[1]

Curran was charged in a 23-count indictment with wire fraud and money laundering, in violation of 18 U.S.C. §§ 1343 and 1956(a)(1), based on a scheme whereby he (1) posed as a medical doctor (2) lured patients into his office with false statements concerning his credentials and his past successes in "curing" the gravely ill; (3) purported to conduct diagnostic tests; (4) made fictitious diagnoses painting a bleak assessment of the patients' health, and (5) convinced and frightened patients into spending thousands of dollars on various "cures," yielding roughly $1.4 million in proceeds to Curran in a two-year period alone.

After an eight-day trial, a jury convicted Curran on 21 counts. Two counts were dismissed during trial. Throughout all proceedings in this Court, Curran was represented by retained counsel, Attorneys Scott Lutes and Michael J. Zarrella.

---

[1] This Court sets forth herein those facts which are necessary for the purpose of ruling on Curran's motion to vacate and related papers. A full recitation of the facts and background of this matter is contained in the decision of the Court of Appeals affirming Curran's conviction and sentence, United States v. Curran, 525 F.3d 74 (1st Cir. 2008).

At trial, the Government's witnesses included former clients of Curran, expert witnesses and representatives of vendors of the medical degree certificates and medical equipment purchased by Curran. The evidence showed that Curran, who had training in naturopathy, held himself out to clients as being a medical doctor as well as a naturopath, in violation of Rhode Island law. His office gave the illusion that it belonged to a medical professional. Signs referred to Curran as a medical doctor, and the walls contained framed diplomas and certifications from various medical institutions that Curran had not attended. In his office, Curran also had brochures describing himself as having the degrees of M.D. N.D. and Ph.D.

During trial, some of Curran's former clients testified that he performed tests on them, including a test utilizing a "BioMeridian Stress Assessment Device" which he claimed evaluated the client's internal organs, and a "live blood test" using a microscope attached to a computer. The evidence showed, however, that the BioMeridian Stress Assessment Device was not approved for diagnosing diseases and that Curran did not have the proper credentials to conduct the live blood tests. After administering the tests, Curran told clients that they were in very ill health and that they had various blood abnormalities and deficient body functions or immune systems.

The evidence also showed that having alarmed the clients, Curran then offered expensive treatments to them, including a so-called "green drink," which he claimed was a nutritional supplement he had invented. In actuality, it was a commercially produced liquid sold by Curran at marked up prices. Another one of Curran's touted "cures" was "Specially Energized water" (E-water), which he said had the "same Synergistic healing properties as the water in Lourdes, France." The water was actually distilled water Curran ran through a blender. He also sold various other exotically named therapies.

One of the Government witnesses was Rhonda Alves, the mother of a patient who was treated by Curran while she had stage IV ovarian cancer. Ms. Alves testified that at their visit Curran spoke with them briefly, did a blood test on her daughter and told her that he had cured other patients with cancer. Ms. Alves also testified that Curran sold her daughter the 'green drink' as well as the E-water. She stated that her daughter attempted to follow the diet prescribed by Curran (eating or drinking nothing but the products he sold) and that she became further emaciated as a result.

The defense presented a number of witnesses at trial, including nine former clients who testified that they were satisfied with Curran's services. Curran testified in his own defense, stating that he believed in all of the methods and products he used and denied any intent to mislead clients.

At sentencing, Curran's counsel submitted letters from 56 former clients saying they were happy with Curran's work and/or had not been victims of fraud. This Court sentenced Curran to 150 months in prison, the middle of the Guideline range. In calculating Curran's base sentence, the court included substantial enhancements based upon the dollar value of the losses suffered by the victims of his fraud and their number, using as the measure of loss the fees his clients had paid him. The Court also ordered Curran to pay restitution to the victims, totaling $1,425,061.62.

Curran appealed, represented by new counsel, Attorney Tamara A. Barney. He raised three principal grounds, all of which challenged aspects of his sentence: (1) the $1.4 million loss calculation which resulted in a 16-level increase in his offense level; (2) this Court's finding that he had more than 250 victims, resulting in a separate six-level sentencing enhancement; and (3) the restitution order. The First Circuit affirmed in all respects. See Curran, 525 F.3d at 78-84. Further review was denied by the U.S. Supreme Court. Curran v. United States, 129 S.Ct. 295 (2008).

Curran thereafter filed the instant § 2255 motion to vacate, represented by Attorney Bernard Grossberg. In his motion he raises five principal grounds, three of which pertain to the alleged ineffective assistance of his trial and appellate counsel. He asserts that his trial counsel: (1) failed to investigate or call all 56 patients who submitted letters supporting Curran at sentencing as witnesses to testify at trial; (2) failed to move to strike or request a curative instruction regarding certain prejudicial testimony by the mother of one of Current's clients who ultimately died of cancer; (3) failed to object to the improper closing argument by the prosecutor concerning the same prejudicial testimony; and (4) failed to present available evidence that certain parasites are found in healthy blood and that his medical degree was legitimate. (Motion to Vacate, Grounds One and Five.) Curran further claims that on direct appeal his appellate counsel (1) failed to challenge the prejudicial testimony and the prosecutor's reference thereto in closing argument; and (2) failed to assert claims of ineffective assistance of his trial counsel. (Id., Ground Two)

In addition, Curran asserts direct claims that he was denied due process under the Fifth Amendment because the above noted prejudicial evidence elicited by the Government prosecutor -- and the prosecutor's reference to such testimony in closing argument -- denied him a fair trial. (Id., Grounds Three and Four.)

The Government has filed an objection to the motion to vacate, to which Curran has filed a reply (Doc. #145) and a supplemental reply requesting an evidentiary hearing. (Doc. #149, 149-1.) Thereafter, Curran filed a motion for leave to amend his motion to vacate, seeking to assert a new ground of ineffective assistance based on counsel's alleged failure to object to a jury instruction defining 'proceeds.' (Doc. #154.) The Government has likewise objected to this motion (Doc. #155), to which Curran has filed a reply (Doc. #157) and affidavit (Doc. #156). This matter is ready

for decision.[2]

DISCUSSION

Generally, the grounds justifying relief under 28 U.S.C. § 2255 are limited.[3] A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 184-185 (1979) ("An error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.").

Because the substantive claims asserted by Curran in Grounds Three and Four are also the subject of several of his ineffective assistance claims, this Court will address those substantive claims first. Both claims concern the testimony of a Government witness, Rhonda Alves. Neither substantive claim has merit.[4]

---

[2] Although Curran seeks an evidentiary hearing on his claims, no hearing is required in connection with any issues raised by his motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). See also Panzardi-Alvarez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1989) (no hearing is required where district judge is familiar with underlying criminal case).

[3] Title 28 U.S.C. § 2255 provides in pertinent part:
A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
28 U.S.C. §2255(a).

[4] Both claims (Grounds Three and Four) may well be procedurally defaulted, as each could have been raised on direct appeal. See United States v. Frady, 456 U.S. 152, 165 (1982) ( motion under §2255 is not a substitute for a direct appeal). However, because the claims clearly fail on their merits and given Curran's assertion of ineffective assistance of appellate counsel, this Court will proceed to bypass

-5-

A.   Direct Claims

1.   Prejudicial Testimony

Curran claims that the prosecutor improperly elicited certain prejudicial testimony from a Government witness, Rhonda Alves, the mother of Taylor Alves, a client of Curran who ultimately died of cancer.[5]  He claims that "In violation of an allowed motion in limine and over timely objections by trial counsel . . . during Rhonda Alves' direct testimony, the prosecutor had her testify, two times, that her daughter died less than seven weeks after being examined and starved to death by the petitioner;" that the prosecutor had the witness characterize Curran as "a snake oil salesman" and testify that Curran described the E-water drink as being, "just like the miracle healing water of Lourdes;" and that the prosecutor led Ms. Alves into describing her daughter as "losing so much weight that she looked like she had been in a concentration camp," blaming Curran's liquid diet. (Motion to Vacate, Ground Three; Reply at 10-11.)[6]  All of this, he claims, violated his due process

the procedural issue and address the merits of each claim, since the result is the same in any event.  See Tse v. United States, 290 F.3d 462, 465 (1st Cir. 2002) ("because we are persuaded that each of these claims is meritless, we need not decide whether any of them is immune to principles of default").

[5]  Although the claim is entitled "Admission of Excluded Prejudicial Evidence in Violation of Fifth Amendment," it focuses on the prosecutor's actions in eliciting the testimony, and this Court so construes it.  To the extent that Curran asserts that the evidence was erroneously admitted, it fails for the reasons noted herein in this Court's denial of the claim as construed.

[6]  As set forth in Curran's motion to vacate, Ground Three states in full:

In violation of an allowed motion in limine and over timely objections by trial counsel (Tr. 5/15/06 at 130-131), during Rhonda Alves' direct testimony, the prosecutor had her testify, two times, that her daughter died less than seven weeks after being examined and starved to death by the petitioner (Tr. 5/15/06 at 138, 147). The prosecutor had the witness characterize the petitioner as "a snake oil salesman", (Tr. 5/15/06 at 143), while focusing on the religious connotations of the drink utilized by the petitioner as being, "just like the miracle healing water of Lourdes" (Tr. 5/15/06 at 143). The prosecutor also led Rhonda Alves, into describing her daughter as, "losing so much weight that she looked like she had been in a concentration camp"; blaming the petitioner's liquid diet; and that her daughter would, "cry that she had to do this because if she didn't follow it exactly, she would ruin it, and my daughter was fighting to live. She would say to us, I'm so hungry, but if I try to eat something, I'll ruin it. She felt responsible for saving her own life. And by the end of that fourth week, we literally begged her to eat ... the week before she died. (Tr. 5/15/06 at 146-147).

-6-

rights under the Fifth Amendment. This claim is both factually inaccurate and without merit.

As to the ruling on the motion in limine, the record shows that at a bench conference immediately prior to Ms. Alves' testimony, this Court addressed Curran's motion to preclude Ms. Alves' testimony, and particularly any testimony that would suggest that Curran's treatment was responsible for her daughter's death. This Court instructed the prosecutor to avoid eliciting any testimony that would suggest that Curran was responsible for her death.

Ms. Alves testified concerning the visit she, her daughter and her husband had with Curran. She described how Curran identified himself as a medical doctor and told them that he had previously restored another cancer patient to full health and about the "false hope" he provided her daughter. She related that Curran told Taylor that he could restore her health if she followed his regimen of detoxification and supplementation and that he spoke of another patient with Stage IV cancer who was extremely weak and that he had restored this person to health. She also described her daughter's mental and physical condition during the visit as well as her own reactions to Curran's statements, stating that she was offended by Curran's claim that the E-Water had the same healing properties as water from Lourdes and that she felt like she "was in the presence of a snake oil salesman." Ms. Alves described how her daughter attempted to follow Curran's directives by ingesting only the products that he sold her and nothing else and that as a result, she lost weight and became emaciated and that the products failed to help her daughter.

Ms. Alves' testimony was unquestionably relevant and within the parameters set by the Court. Indeed, much of Ms. Alves testimony was corroborative of other victims' testimony

concerning how Curran identified himself as medical doctor and his claim that he could restore her daughter's health if she followed his regimen of detoxification and supplementation.

This Court finds nothing in this testimony suggesting that Curran's treatment caused Ms. Alves' daughter's death. The fact that Ms. Alves mentioned that her daughter was suffering from stage IV ovarian cancer at the time she visited Curran, from which she ultimately died, was in context and did not imply that her death was caused by Curran's treatment, nor was it unduly prejudicial in view of the overwhelming evidence of Curran's guilt adduced at trial.

Accordingly, this Court cannot say that "the probative value of the evidence was substantially outweighed by the danger of unfair prejudice . . . or misleading the jury," Fed. R. Evid. 403, such that the failure to exclude it violated Curran's due process rights to a fair trial. Put another way, in view of the overwhelming evidence of Curran's guilt, the brief references complained of in Ms. Alves' testimony simply were not "so unduly prejudicial that it render[ed] the trial fundamentally unfair." Payne v. Tennessee, 501 U.S. 808, 825 (1991). Even if the testimony complained of were somehow deemed prejudicial, it was, at most, harmless error. See United States v. Rodriguez-Berrios, 573 F.3d 55, (1st Cir. 2009) ("The essential inquiry in harmless error review is whether the improperly admitted evidence likely affected the outcome of the trial.") (internal quotations omitted).

    2.    <u>Prosecutorial Comment on Testimony</u>

Curran further claims that the prosecutor's references to Ms. Alves' testimony during closing argument were improper and inflammatory so as to deny him due process. He argues that during final argument the prosecutor made an express reference to the death of Ms. Alves' daughter and to her impression of Curran as "a snake oil salesman" in an attempt to elicit jury sympathy for the

alleged victims, including the one who died of cancer. (Motion to Vacate, Ground Four; Reply at 11-12.) For the same reasons, this claim likewise fails.

Prejudicial remarks in closing argument are objectionable only if they have "so poisoned the well that the trial's outcome was likely affected." Henderson, 320 F.3d at 107 (quotation marks and citation omitted). Factors for consideration include: "(1) the severity of the prosecutor's misconduct, including whether it was deliberate or accidental; (2) the context in which the misconduct occurred; (3) whether the judge gave curative instructions and the likely effect of such instructions; and (4) the strength of the evidence against the defendants." United States v. Nelson-Rodriguez, 319 F.3d 12, 38 (1st Cir.2003) (internal quotations omitted). Accord United States v. Landry, 631 F.3d 597, 606 (1st Cir. 2011).

Here, this Court has already found that the portions of Ms. Alves' testimony to which the prosecutor made reference were not improper or inflammatory. Viewed in the context of his overall closing argument, the prosecutor's references to Ms. Alves' testimony, including her daughter's death and her "snake oil salesman" description of Curran, even if objectionable, simply did not "so poison[ ] the well that the trial's outcome was likely affected," given the overwhelming nature of the evidence against Curran. Henderson, 320 F.3d at 107. The remarks were made in the course of the prosecutor's summary of the evidence and both items were mentioned in the evidence, and no curative instruction was requested.

Thus, Curran's claim that the prosecutor's remarks rendered his trial fundamentally unfair is without merit.

B.    Ineffective Assistance Claims

A defendant who claims that he was deprived of his Sixth Amendment right to effective

assistance of counsel must demonstrate:

    (1)    That his counsel's performance fell below an objective standard of reasonableness; and

    (2)    [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See United States v. Manon, 608 F.3d 126 (1st Cir. 2010) (same).

To satisfy the deficient-performance prong, the defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" Manon, 608 F.3d at131 (quoting Strickland, 466 U.S. at 690). Counsel's performance is accorded deferential review and should not be assessed based on hindsight. Strickland, 466 U.S. at 690-92. See Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) (same). To satisfy the prejudice requirement under Strickland, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of trial would have been different. United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006) (citing Strickland, 466 U.S. at 695).

    1.    Admission of Prejudicial Testimony

In view of this Court's determinations of Curran's direct claims, his ineffective assistance claims pertaining to Ms. Alves' testimony and the prosecutor's references thereto in closing arguments (Motion to Vacate, Ground One; Reply at 5-8) may be readily disposed of.

First, Curran's claim that this his counsel failed to move to strike, or request a curative instruction as to Ms. Alves' testimony ignores the fact that counsel filed a pretrial motion in limine objecting to Ms. Alves testifying, which motion was addressed at a bench conference immediately before her direct testimony. See supra at 7. This Court partially granted the motion by limiting the

testimony to interactions between her and Curran and by directing the Government to avoid eliciting testimony suggesting that Curran's treatment contributed to her daughter's death and to refrain from "creating an impression that [Ms. Alves daughter] died as a result of something [Curran] did or didn't do. (1:129-132). Thus, counsel did all he could to preclude or limit this testimony, and indeed, he was partially successful.[7]  The fact that counsel was not totally successful does not mean that his performance was deficient. Campusano v. United States, 2004 WL 1824112 at *4 (S.D.N.Y.,2004) ("The fact that an attorney lost a particular argument cannot be used as a barometer of overall poor performance.)

Moreover, as noted above, Ms. Alves' references to her daughter's attempts to follow Curran's instructions and treatment shortly before she died and to her own perception of Curran as a "snake oil salesman" were not so prejudicial or inflammatory that counsel's failure to object and/or to obtain a curative instruction was objectively deficient conduct.  Reviewing counsel's conduct as a whole, it is clear that his representation did not fall outside of the "wide range of reasonable professional assistance" notwithstanding his specific failure to request a curative instruction to testimony to which he had already unsuccessfully objected. Strickland, 466 U.S. at 689.[8]

Even if there was any error in admitting this testimony or any portion of it,  Curran has not shown how he was prejudiced by it. The statement was made in the course of an otherwise factual

---

[7]  Curran himself states in his papers that this testimony was elicited "over timely objections by [his] trial counsel." (Motion to Vacate , Ground Three; Reply at 10.)

[8]  Curran's suggestion that Ms.Alves' testimony may have somehow constituted an improper reference to prior bad acts (Reply at 10-11) is spurious.  The testimony solely concerned her and her daughter's visit to Curran's office and Curran's treatment of her daughter, one of the many victims of his offenses. See United States v. Landry, 631 F.3d 597, 601 (1st Cir. 2011) (Federal Rule of Evidence 404(b) prohibits the admission of prior bad acts to establish an individual's character or propensity to commit a crime.) (Emphasis added.)

narrative by a percipient witness describing her daughter's visit with Curran. Ms. Alves was one of approximately 15 clients, or relatives of clients, who dealt directly with Curran and who testified at trial. The Government's direct case included testimony from associates of Curran (the man who trained him on naturopathy), government agents, testifying experts (Dr. Robert Crausman) and business associates (the man who provided him some of his bogus degrees from Chatworth College, a woman from St. Luke's School, an unaccredited medical school that Curran did not attend). Given the overwhelming nature of the evidence against Curran, there is little or no likelihood that the outcome at trial would have been different had counsel objected to those portions of Ms. Alves' testimony.

2.     Prosecutor's Statements

Curran's further claim that his counsel was ineffective in failing to object to the prosecutor's references to Ms. Alves' testimony during closing argument (Motion to Vacate, Ground Four; Reply at 11-12) likewise fails. Given this Court's finding, supra, that the prosecutor's references were not in and of themselves improper or inflammatory or otherwise prejudicial to the trial's outcome, counsel's conduct in failing to object to those references or to request a curative instruction was not deficient. Moreover, counsel could have reasonably wished to avoid bringing additional unwanted attention to those points by objecting to references to them during closing argument.

In short, Curran has shown neither deficient performance by his counsel, nor prejudice from that performance, in connection with Ms. Alves' testimony and the prosecutor's comments thereon. His ineffective assistance claim on these points fails.

3.     Failure to Call Defense Witnesses

Curran also claims that his counsel was ineffective in failing to call as witnesses at trial all 56 patients who submitted favorable letters in connection with his sentencing. This claim is at odds with the record and without merit.

"The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." <u>Lema v. United States</u>, 987 F.2d 48, 54 (1st Cir. 1993).

Here, the record shows that prior to trial the Government filed a motion in limine to exclude all defense witnesses who were former clients of Curran and were willing to testify that their condition improved under his treatment, on the basis that their accounts of improved conditions were not relevant to the issue of Curran's intent to deceive. (See Doc. # 66.) Defense counsel objected to this motion (Doc. #64), and this Court permitted Curran to call some of these witnesses. At trial, Curran presented the testimony of approximately nine former clients, some of who were also friends or later became employees of Curran. Trial counsel also presented testimony from a chiropractic doctor who traveled from Nebraska to support Curran's use of the Biomeridian machine in his practice, as well as character evidence. Curran himself testified for over one day. Thus, counsel was successful in presenting a number of favorable witnesses on Curran's behalf. Moreover, as Curran acknowledges, trial counsel also obtained materials from 56 clients for sentencing purposes.

Based on this record, Curran's argument that counsel should have sought to present additional witnesses is specious. Counsel could have reasonably concluded that in view of its earlier ruling, this Court would have denied any request to call all 56 witnesses to testify, particularly where that testimony was not relevant to the issue of whether Curran intended to deceive them concerning his credentials as a medical doctor and the efficacy of his treatment. <u>See</u> Fed. R. Evid. 403 (defining relevant evidence as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); <u>United States v. Pimental</u>, 380 F.3d 575, 585 (1st Cir. 2004) (success of fraud offense is irrelevant to whether defendant intended to defraud his victims); <u>United States v. Vest</u>, 116 F.3d

1179, 1184 (7th Cir. 1997) ("[T]he defendant's intent to defraud does not turn on whether some of the clients actually needed such treatment it is enough that the defendant thought at the time that they did not or that he made the decision without regard to whether there was a need therefor.") (internal quotations omitted).[9] Moreover, the fact that some of Curran's patients may have been pleased with his services he rendered does not negate his intent to deceive them. See United States v. Brien, 617 F.2d 299, 311 (1st Cir. 1980) (If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. . . . The only issue is whether there is a plan, scheme or artifice to defraud.").

For the same reasons, Curran was not prejudiced by counsel's failure to present additional testimony, given that such evidence would not have been relevant to the central issue of Curran's intent to deceive. Indeed, as he acknowledges, counsel presented letters from those 56 witnesses to this Court for consideration at Curran's sentencing.

In the face of the foregoing, trial counsel was not required to persist in what would have been a futile attempt to present these additional witnesses. See Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic.") (citing United States v. Wright, 573 F.2d 681, 684 (1st Cir.1978)).

Thus, Curran has shown neither deficient performance not prejudice with respect to counsel's failure to call additional witnesses, and this claim also fails.[10]

---

[9] In Vest the defendant doctor was convicted of wire fraud in connection with his ordering medically unnecessary tests and billing for them. At trial, the defense sought to show that some of the tests defendant ordered were in fact medically necessary. The Seventh Circuit upheld the district court's limitation on that line of questioning, stating that "[i]f in hindsight it turns out that, considering patients' pre-visit and post-visit records, the tests Vest ordered were medically necessary, that is merely a fortuitous coincidence." Id. at 1184.

[10] To the extent that Curran purports to make a direct claim that this Court's failure to permit him to present additional witnesses supporting his "satisfied patient" defense violated his Fifth

-14-

4. Ineffective Assistance - Miscellaneous Claims

Curran further claims that his counsel was ineffective in failing (1) to present evidence that certain bacteria/parasites can be found in the blood of healthy persons; and (2) to call witnesses that would have supported his argument that his M.D. degree was a legitimate degree. (Motion to Vacate, Ground Five.) Apart from a brief reference to these claims, neither claim is developed with any argument, and they may be denied for that reason. See Cody v. United States, 249 F.3d 47, 53, n. 6 (1st Cir. 2001) (ineffective assistance claim raised in a perfunctory manner in § 2255 proceeding deemed waived). See also United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (arguments not developed on appeal are deemed waived).

Even if considered, both claims are spurious. The evidence at trial showed that Curran used the blood tests as part of a scam to frighten his patients into buying his supplements. There was no evidence at trial that parasites are not found in blood. To the contrary, Dr. Robert Crausman testified that parasites may be found in blood but that it is a rare occurrence, and that such findings should be reported to the appropriate health agency (which Curran never did). There was evidence at trial that Curran's office records purported to show that parasites were found in the blood of every client for whom he performed the test even though he lacked credentials to conduct the test. Curran does not show how he was prejudiced by the failure to produce such evidence or how such evidence would have changed the outcome.

---

Amendment right to present such evidence (see Reply at 9-10), it fails for the reasons noted above in connection with his ineffective assistance claim on this point. Curran has not shown that the outcome of his trial would have been different, nor was this Court's limitation on the number of defense witnesses testifying to the same point erroneous, much less a constitutional violation, where the testimony was not relevant to the issues of his lack of medical credentials and his intent to deceive and was in any event cumulative. See Fed. R. Evid. 403. Moreover, this direct claim, which implies that counsel attempted to have such testimony presented, contradicts Curran's ineffective assistance claim on the same point, in which he argues the opposite.

Similarly, the evidence at trial was overwhelming that Curran was not a medical doctor, not only from the evidence adduced from the Government's witnesses, but also from Curran's own testimony, including his assertion that he received his degree by studying some books that were sent to him in the mail. Curran does not identify any witnesses or describe any testimony that would have helped him on this point.

5. Ineffective Assistance - Appellate Counsel

Curran claims that his appellate counsel was ineffective in failing to raise (1) his direct claims concerning the admission of Rhonda Alves' testimony and the prosecutor's reference to that testimony during closing argument; and (2) the alleged ineffective assistance of trial counsel discussed supra These claims fail.

It is axiomatic that "appellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). Even if a defendant succeeds in making that showing, he must still "show a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." Id. at 285.

As to the direct claims, given the relative merits (or lack thereof) of the direct claims, as discussed supra at 6-9, appellate counsel could have reasonably concluded that those claims were relatively weak and determined to forego raising them in favor of the claims he did raise. Moreover, Curran has not shown any reasonable probability that he would have prevailed on his appeal as to either ground. See Robbins, 528 U.S. at 285.

Likewise, appellate counsel was not ineffective in failing to raise on direct appeal claims of trial counsel's ineffective assistance with respect to these issues, or with respect to presenting additional defense witnesses, because ineffective assistance claims are typically not to be raised on

direct appeal. See e.g. United States v. Reyes, 352 F.3d 511,517 (1st Cir. 2003) (this court has held, "with a regularity bordering on the monotonous[,] ... [that] claims of ineffective assistance cannot make their debut on direct review" but should be asserted to the district court under 28 U.S.C. § 2255 (quoting United States v. Mala, 7 F.3d 1058, 1063 (1st Cir.1993)).

Accordingly, Curran's claims of ineffective assistance by his appellate counsel likewise fail.

D.    Motion to Amend

Curran has also filed a motion for leave to amend his motion to vacate (Doc. #154), seeking to assert a new claim. The proposed new claim (Ground Six) alleges that this Court's jury instructions concerning the money laundering charges (Counts 20 - 23) -- which stated that the term "proceeds" as used in the offense statute, 18 U.S.C. §1956(a)(1), pertained to "receipts" of the illegal activity rather than to "profits" from that activity -- were erroneous in view of the Supreme Court's decision in United States v. Santos, 553 U.S. 511 (2008).[11]   Curran also seeks to assert claims of ineffective assistance of trial counsel and appellate counsel for failing to raise this issue.

The motion to amend fails for both procedural and substantive reasons. As the Government points out, the proposed claim was filed more than one year after Curran's conviction became final. Therefore, the claim may not be asserted unless it relates back to his original claims. See Fed. R. Civ. P. 15(c). Pursuant to that rule, an otherwise untimely pleading amendment may "relate back" to the date of the timely-filed original pleading if the claim asserted in the amended plea "arose out of the

---

[11]  Curran first describes this proposed new claim in his supplemental reply (Doc. #149, 149-1) to the Government's objection to his original motion to vacate (Motion for Leave to File Supplemental Reply at 2-3; Supplemental Reply at 1-12), after briefly alluding to it at the conclusion of his initial Reply. (Reply at 12-13, mistakenly designating claim as 'Ground Five'.) Because amendments to § 2255 motions are governed by Fed. R. Civ. P. 15, see United States v. Ciampi, 419 F.3d 20 (1st Cir. 2005), this Court finds that the motion to amend supersedes his prior filings as to this claim and will focus on that motion in determining whether Curran may assert the new claim. The result is the same under either approach.

conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'"

Ciampi, 419 F.3d 20, 23 (1st Cir. 2005) (quoting Fed. R. Civ. P. 15(c)(2)).

In the habeas corpus context, "the Rule 15 'relation back' provision is strictly construed, in light of 'Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them].'" Id. (quoting Mayle v. Felix, 545 U.S. 644, 657 (2005)). "Accordingly, amended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended." Id. at 24.

Here, Curran's new claim, which alleges erroneous jury instructions and counsel's failure to challenge those instructions, arises out of facts separate and distinct from his original claims, relating to (1) the admission of allegedly prejudicial testimony and the prosecutor's comments thereon (Grounds One through Four) and (2) his counsel's failure to call favorable defense witnesses (Ground One). As such, they do not arise out of the "same core facts," so as to relate back to his original motion to vacate. See Mayle, 545 S.Ct. at 656-57 (disallowing relation back, and holding that claims relating to admission of out-of-court statements were distinct under Rule 15, inasmuch as one involved a Fifth Amendment challenge to the defendant's own pretrial statements, and the other involved a Confrontation Clause challenge to videotaped witness testimony). Thus, the motion may be denied on the basis of untimeliness.

In addition, as the Government points out, Curran could have asserted this new claim at the time he filed his original motion to vacate, since the Santos decision on which it is based was issued on June 28, 2008 --more than two years after Curran's trial and while he was seeking review by the Supreme Court. Curran proffers no good reason for his delay, nor does this Court find any. See Walton v. Nalco Chemical Co., 272 F.3d 13(1st Cir. 2001) (unseemly delay may be ground for denial of proposed amendment); Rodriguez v. United States, 286 F.3d 972, 980 (7th Cir. 2002) (noting that

district court was free to deny motion to amend § 2255 claim based on delay).

Furthermore, permitting the new claim to proceed would likely be futile in any event, given that it is far from clear that the <u>Santos</u> decision on which it is based renders this Court's instructions erroneous. In <u>Santos</u>, the Supreme Court ruled, under the rule of lenity, that the term "proceeds" in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), should be interpreted as "profits" rather than "receipts," at least when the predicate offense is an illegal lottery operation in violation of 18 U.S.C. § 1955. See <u>Santos</u>, 553 U.S. at 510-14 (plurality opinion). Curran argues that this would have the effect of rendering noncriminal the conduct charged in Counts 20 - 23 – to the extent it involved 'proceeds' of his illegal activities rather than profits.

Despite several interactions with <u>Santos</u>-based claims, the First Circuit has not yet squarely applied that decision to define the scope of 'proceeds' in a § 1956 money laundering offense such as the one here.[12] Other circuits are split on this issue, although several courts have noted that the decision should be interpreted narrowly, given that only one part of its plurality opinion was joined by a fifth justice, and that the decision therefore should be limited to its facts -- which concerned a gambling operation. See <u>United States v. Quinones</u>, – F.3d –, 2011 WL 1120254 at *8 (2d Cir. Mar. 29, 2011) (noting circuit split on whether to interpret <u>Santos</u> holding narrowly or broadly and concluding that 'proceeds' of illegal drug transactions were not limited to 'profits').[13]

---

[12] See <u>United States v. Matos</u>, 611 F.34d 31, 373-38 (1st Cir. 2010) (declining to consider Santos issue, where issue was raised in appellant's reply brief); <u>United States v. Bucci</u>, 582 F.3d 108, 122-23 (1st Cir. 2009) (finding Santos not controlling to determine scope of 'proceeds' in drug forfeiture statute, 18 U.S.C. §853); <u>United States v. Levesque</u>, 546 F.3d 78, 82-83 (1st Cir.2008) (remanding a question raised on direct appeal regarding the applicability of Santos to the construction of another statute); <u>United States v. Godin</u>, 534 F.3d 51, 60 (1st Cir.2008) (citing <u>Santos</u> only for its articulation of the lenity rule).

[13] In <u>Quinones</u>, the Second Circuit reviewed the various opinions in the <u>Santos</u> decision, noting that "a fragmented Court" decided a case in which "no single rationale explaining the result enjoy[ed] the assent of five justices," 2011 WL 1120254 at *8. The court further noted that the legislative history of §1956 suggests that 'proceeds' need not be limited to 'profits' in all cases under that statute. <u>Id</u>. at *8.

-19-

In short, given the "fractured decision" in <u>Santos</u>, <u>id</u>. at *7, and the lack of a definitive statement in this Circuit regarding the scope of that decision with respect to the instant offense, the split in circuits regarding its scope, and the delay in Curran's raising of the claim, this Court finds that the newly asserted claim would likely be futile and thus should not be permitted to go forward in this §2255 proceeding.

Finally, Curran's proposed claims of ineffective assistance on the part of his trial counsel and appellate counsel for failing to raise the foregoing issues concerning "proceeds" likewise may not go forward, for similar reasons. The claims are untimely and do not let relate back, and given Curran's full knowledge of the claimed errors when they occurred, he has shown no good cause for delay in asserting them here. Moreover, to the extent that the proposed substantive claim itself lacks merit (discussed <u>supra</u>), the ineffective assistance claims would fail as well. <u>See Tse</u>, 290 F.3d at 465 (where substantive § 2255 claims fail on merits, "related claims that counsel rendered ineffective assistance in failing to press claims at trial or on appeal must also fail.")

For all of these reasons, Curran's motion to amend and the accompanying request for evidentiary hearing must be denied.

This Court has considered all of Curran's other arguments and finds them to be without merit.[14]

<hr>

<u>See also</u> <u>Levesque</u>, 546 F.3d at 82-83 and n. 3 (noting Justice Stevens' disagreement with the plurality view that a single definition of the term 'proceeds' in §1956(a)(1) should apply regardless of nature of predicate offense but remanding to district court for initial consideration of issue).

In any event, this Court need not plumb the depths of the <u>Santos</u> decision for purposes of ruling on Curran's motion to amend in this proceeding.

[14]   This Court has reviewed Curran's Affidavit (Doc. #156) which he belatedly submitted in connection with his motion to amend. The affidavit contains additional assertions concerning his original ineffective assistance claims but adds nothing to his argument and does not change the result.

## CONCLUSION

In view of the foregoing considerations, Curran's motion to vacate pursuant to 28 U.S.C. §2255 is hereby DENIED and dismissed. In addition, Curran's motion to amend and his accompanying request for an evidentiary hearing are likewise DENIED. Curran's Motion for Leave to File Supplemental Reply is DENIED as moot.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is <u>not</u> appropriate for the issuance o f a certificate of appealability (COA), as Curran has failed to make a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. §2253(c)(2).

Curran is advised that any appeal filed pursuant to the COA granted must be filed within the time period provided by Rule 4(a) of the Federal Rules of Appellate Procedure. <u>See</u> §2255 Rule 11(b). Falcon is further advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> § 2255 Rule 11(a).

SO ORDERED:

_Mary M. Lisi_
Mary M. Lisi
Chief United States District Judge

Date: April 26, 2011

-21-